31522. JONES *v.* BRITT.

DECIDED MAY 2, 1947.

*William A. Thomas,* for plaintiff.

*Thomas L. Slappey,* for defendant.

MacIntyre, P. J. S. D. Jones brought suit against M. A. Britt for personal and property damages. The case proceeded to trial before a jury. After the introduction of evidence by the plaintiff, he offered an amendment to his original petition by add-

ing thereto a second 'count. The trial judge struck paragraph eight of the second count which alleged that the plaintiff "shows that under the facts and circumstances of this case he is entitled to punitive damages," but allowed the remainder of the second count.

The defendant then made a motion for nonsuit. The judge ruled: "The motion for nonsuit having been made at the conclusion of plaintiff's evidence and after the amendment was allowed, and the evidence in the case from the plaintiff showing that two persons were left in the car; the evidence being that the male person left in the car was sober; and the evidence by the plaintiff that a male person was driving at the time the accident happened, the motion for a nonsuit must be necessarily granted, and an order to that effect will be taken."

The plaintiff assigns as error the disallowance of paragraph eight of his second count and the granting of the defendant's motion for nonsuit.

In his original petition the plaintiff alleges in part: "On the night of the 20th of November, 1944, your petitioner had his ice and coal truck, with which he did business of delivery [of] such commodities to the general public, parked at the intersection of Hogue and Irwin Streets in Atlanta, Ga.; . . that at about eight p. m., at said time and place he was standing up in said truck working, getting some coal out of it; that defendant, while he [plaintiff] was so standing unloading said coal from said truck, drove his automobile at a rapid rate of speed, in excess of 25 miles per hour, directly into the rear of his said truck and violently knocked it forward and injured said truck, as will hereinafter be shown, and also knocked, by said striking of his said truck, petitioner out of said truck and injured him and his body as will be shown hereinafter; . . that defendant jumped out of his said automobile, the name of which at the writing of this petition petitioner does not know, and ran away from the scene of the tragedy; that defendant then and there left his billfold or pocketbook in his said car at the scene of said tragedy and collision; that defendant also left his said hat in said automobile at said time and place."

The defendant, on cross-examination, testified: "I did not know anything about my car being in an accident on the night of the

20th of November, 1944, until the next morning when the police reported it to me. I had reported the car as stolen. I last saw my car around 7:00 o'clock on the 20th of November. . . My car was sitting in front of the Little Five Points lunch counter on McLendon Street. Me and my wife eat over there. . . . I [was] waiting for her to come. . . She was going to meet me at that restaurant. I was by myself. Mr. Olson—the man that runs the place—some lady in there was drunk; and he asked me if I would take her out there on Highland Terrace, I believe it was. I got her and Paul Stevens, a friend of mine that works for the Georgia Railroad. I asked him to go with me, and he and her and I got in the car; and she got my billfold. I did not know at the time that she got it, but they found it on her. I could not swear she got it. . . She got in the middle and Paul was on the outside and I was driving. We left Little Five Points and went from there to Highland Avenue, and I missed my billfold there and turned around and went back and parked right in front of the place; and I got out to go in and asked Carl if he knew anything about my billfold. Paul came in and asked me if I had found it, and I turned around and went back to my car, and all was gone. As to whether I left my keys in the car— I left Paul and her in the car. As to whether I employed him to watch my car while I went in with that drunk woman in it— I just asked him to go with me, and he went with me. I said, you wait here; I will be back in a minute. Me or him was not drunk. . . I left him and the woman in the car when I got out, with the switch key in it. . . When I went into the restaurant to hunt for my pocketbook, I could not have been in there over ten minutes . . and when I went out the door to leave, the car was gone, and I turned around and reported the car stolen; but my card was in the billfold and I did not have the number. I think it was around 7:30 or 8:00 o'clock when I reported it stolen."

The plaintiff testified: "I had a truck on the night of the 20th of November, 1944. A man ran into me and my truck on that night. . . I seen the car coming about fifteen feet from me. There was a man and a woman in the car. The man was under the steering wheel and the woman was sitting on the left. I did not see another man . . , when it [the defendant's automobile] hit, it knocked me slam down betwixt the car and my truck and

knocked my truck up on the sidewalk into a telegraph pole. . . When I was laying down on the ground and talking with those people, a man got out and went on across the street. Where he went I don't know, but I saw an automobile come up, and I was still laying down, and by that time he disappeared and I have not seen him since. . . They [the police] got just about that much whisky out of the car; . - . and then a pocketbook and a hat. I don't know the name that was in that pocketbook. . . The man that jumped out of the car was a white man, and he was the size of the man that you point out. He was bareheaded and he ran across the street. It favored that man [the defendant]; I could not swear it was him. I only know it was a white man."

In count two of the plaintiff's petition as amended it is alleged: "On the night of November 20, 1944, defendant left his four-door Pontiac automobile at Little Five Points in Atlanta, Georgia, with a drunken woman named Margaret Sherwood in same, and that at the time he so left same, unattended, he left his ignition keys in said car with said drunken woman, which was negligence; that said drunken woman did drive same to Hogue and Irwin Streets in Atlanta where petitioner's truck was parked and did run into his said truck and did strike it and damage and injure it in the sum of $155.50, which is reasonable, and the damage was to the body of this truck; . . he shows that under the facts and circumstances of this case he is entitled to punitive damages."

Taken in connection with the other testimony of the plaintiff, it seems to us that the last two sentences thereof quoted above were words of caution; at most they were words of uncertainty which went to the weight which should be given to his testimony rather than their admissibility. When the plaintiff stated that the driver of the car in question was a white man, that he was the size of the defendant and favored the defendant, or, in other words, had the appearance or resembled the defendant, the witness was merely stating the appearance of a thing or person as viewed by him. *Mimbs* v. *State,* 2 *Ga. App.* 387 (58 S. E. 499). Paraphrasing the language in Wharton's Criminal Evidence, 11th. Ed., Vol. 1, p. 327, and substituting there the word "defendant" for the word "accused" and the words "scene of the collision" for the words "scene of the crime," it would read as follows: "If a

146

witness bases his testimony on his own knowledge and not on information furnished by another, his opinion, belief, judgment, or impression as to the identity of a person or an object is admissible in evidence. He may base his conclusion on the appearance, size, tone of voice, or any mark of peculiarity of the defendant. Other facts may also be considered for the purpose of identifying the defendant. Evidence of articles owned by the defendant and found at or near the scene of the collision is universally admitted."

In State v. Farmer, 179 Minn. 516 (229 N. W. 789), it is said: "The identification of the accused in a criminal case need not be positive and certain. It is enough that an eyewitness testifies that it is his belief, opinion, or judgment that the accused is the person whom he saw commit the crime. The indefiniteness and uncertainty in such testimony affect its weight rather than its admissibility." In People v. Carey, 125 Mich. 535 (84 N. W. 1087), it is said: "The photograph [of the defendant] being admissible, it was competent for witnesses to testify whether it looked like the person seen committing the crime."

Relative to count one of the petition, the evidence is undisputed that the automobile of the defendant, a white man, is the car that negligently collided with the parked truck in which the plaintiff was standing unloading coal, thereby causing injury to the plaintiff. The evidence of the plaintiff shows that the negligent driving of the defendant's car was the proximate cause of such injury; that when the defendant's car struck the plaintiff's truck the man who was driving the defendant's car jumped out of it and ran; and that he was the size of the defendant, was bareheaded, and favored [resembled] the defendant. Other evidence shows that at the time of the collision the defendant's hat was found in his car as well as his pocketbook. We think the evidence disclosed circumstances which were such as to present an issue of fact for determination by the jury as to whether the defendant was driving his car at the time of the collision, notwithstanding the fact that the defendant testified that he was not present and was not so driving his automobile, but that it had been stolen and was being driven by a third person without his knowledge or consent.

"The effect of a nonsuit is to abruptly terminate the whole case; it puts the entire case out of court, leaving the plaintiff at liberty to bring it again." Talbotton Railroad Co. v. Gibson, 106 Ga.

229, 237 (32 S. E. 151). Having decided that the court erred in granting a nonsuit in the plaintiff's case for the reason that the jury would have been authorized, not required, to return a verdict in his favor under count one, and it being the rule that "granting a nonsuit as to a portion of the plaintiff's case is a thing unknown to our practice," the case is reversed and a new trial granted on the ground that the trial judge erred in granting a nonsuit. *Swain* v. *Macon Fire Insurance Co.,* 102 *Ga.* 96, 102 (29 S. E. 147).

All other assignments of error have been carefully considered, none of which are meritorious.

*Judgment reversed. Gardner and Townsend, JJ., concur.*