38389.. MARTIN v. THE STATE.

DECIDED JULY 15, 1960.

*Jess H. Watson, Leon Boling,* for plaintiff in error.

*Sam P. Burtz, Solicitor-General, Thomas A. Roach,* contra.

TOWNSEND, Judge. ■ Error is assigned on the rejection of testimony by three witnesses that after the injured had been conveyed to the hospital, at a period of time some thirty minutes or so after the collision, Gerald Carnes, who thought his unconscious companion was in fact dead, said, "I killed Cecil." Carnes was not offered on the trial as a witness by either side, nor was his absence explained. It is, however, a general rule that testimony of a witness that he heard another confess to the crime is inadmissible as hearsay (*Daniel v. State,* 65 Ga. 199 (1); *Robinson v. State,* 114 Ga. 445 (2), 40 S. E. 253; *Lyon v. State,* 22 Ga. 399 (1)) and this is true although the person making the confession is since deceased. *Green v. State,* 153 Ga. 215 (2) (111 S. E. 916).

The statement was not a part of the res gestae of the collision. Carnes was conscious when he was removed from the automobile and talked with one of the witnesses about the collision, but did not make the statement in question until some time from thirty minutes to over an hour later after he had been conveyed to the hospital. It is impossible to tell whether the statement was made immediately upon Carnes' first receiving the impression that the defendant was dead, but the defendant was not in fact dead, and the expression was cryptic and susceptible to a construction that Carnes felt himself morally responsible for the death in allowing the defendant to drive the automobile when the defendant had no license to drive. There is no merit in special grounds 2, 3 and 4 of the amended motion for new trial.

■ Error is assigned on the refusal to allow a State trooper who investigated the collision to answer the question: "And you asked him who was driving?" It appears that the defendant suffered a cerebral concussion and remained unconscious for a number of hours; that at about 2 the following afternoon the trooper went to the hospital room and found the defendant, his sister, Carnes, and two of Carnes' relatives there; that the defendant appeared to be asleep when he arrived, but he

was able to talk with him. It does not appear whether the defendant had been conscious for any appreciable length of time or whether he had discussed the matter before the arrival of the trooper. However, testimony that at this interview the defendant had stated he was not driving the automobile was properly excluded as a self-serving declaration not admissible as part of the res gestae of the event.

This ruling might be different had the witness on direct examination testified to his investigation and conversation with the witness, for then the witness would have been entitled to prove the entire conversation. The direct examination, however, was confined to the conditions which the trooper found at the scene, and the conversation with the defendant was first inquired into on cross-examination for the purpose of proving that the defendant had, subsequently to the time of the collision, denied his participation.

■ Error is assigned on the charge of the court: "It is unlawful for one to operate a motor vehicle to the left of the center line of the highway." This charge is taken from *Code Ann.* § 68-1633, and since there was no evidence adduced to authorize a finding that the automobile in question was operated on the left side of the highway under one of the exceptions to that general law (such as while passing another vehicle, or upon a highway posted for one way traffic, etc.) the charge was not error for any reason assigned.

■ As to the general grounds, where there is no positive and direct evidence in the case as to the identity of the driver of an automobile because of injury or death of the occupants, the jury may arrive at a conclusion from testimony as to the positions of the automobiles and their passengers. *Kimberly v. Reed,* 79 Ga. App. 137 (53 S. E. 2d 208); *Jones v. Britt,* 75 Ga. App. 142 (42 S. E. 2d 648); *Pettigrew v. Branch,* 101 Ga. App. 534 (114 S. E. 2d 391). There was sufficient evidence, including the fact that both occupants of the defendant's automobile were in the front seat unconscious, the defendant was under the steering wheel, his feet were entangled in the brake pedals, and the car door was jammed, to authorize the finding that the defendant was in fact the driver of the death car.

The deceased O. G. Seabolt was a man of about 62 years of age and in good health at the time of the collision. As a result of it he suffered pelvic injuries including a separation of the pelvic bone, fractured ribs, head fracture, concussion, and abrasions of the face and forehead. He was unable to move his legs while in the hospital. He remained in the hospital and appeared to be making a satisfactory recovery, then died suddenly on the ninth day. The attending physician testified on direct examination that the injuries could have caused his death; on cross-examination he testified: "He asked me if the bruises he received were sufficient to cause death; as a matter of fact, it some times doesn't take a big injury to cause death; as to whether I know that I really thought that this man died as the direct result of these injuries—well, I can't say. As a matter of fact, the night he died his condition was very satisfactory; I thought he was doing all right. He was making arrangements to go home, and we were planning on letting him go home. As to whether it is in the realm of possibilities that the man could have died suddenly, yes, he could have died suddenly; he could have died from a heart seizure. There was no autopsy performed after his death . . . I asked an autopsy." It is contended, in view of this testimony, that the State failed to prove the corpus delicti, since under the evidence the death of the person alleged to have been murdered could as easily have resulted from a heart seizure unconnected with the injuries he received in the wreck as it might have with the latter. To sustain the conviction it is of course necessary to make it affirmatively appear that the death resulted from the criminal agency. *Warren v. State*, 153 Ga. 354 (112 S. E. 283). Where there is no testimony except that of witnesses who state they do not know how the deceased met his death, the evidence is insufficient to sustain conviction since it may be presumed that death resulted from natural causes. *Langston v. State*, 151 Ga. 388 (106 S. E. 903); *Lee v. State*, 76 Ga. 498. In *Kilgore v. State*, 95 Ga. App. 462 (98 S. E. 2d 72) conviction was reversed where the only medical witness stated that it was impossible for him to say whether death resulted from a blow struck by the defendant or from a brain tumor. In *Wilson v. State*, 190 Ga. 824, 829 (10 S. E. 2d 861)

it was stated: "Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of the death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause." And in *Weaver v. State*, 200 Ga. 598 (2) (37 S. E. 2d 802) it was held that where there was evidence before the jury relating to the severity of the wound, and a lack of showing of other independent cause of death, the conviction was not unauthorized because the medical witness testified that death was caused by a thrombus, he also stating that in his opinion it was caused by the wound. The immediate cause of all deaths is heart failure; if the deceased in this case died from a heart seizure, the question of whether such heart seizure was "materially accelerated" in the words of Justice Jenkins by the injuries received was still open for determination, and on this question the doctor expressed no opinion. There was evidence as to the previous good health of the deceased, as to the nature and extent of his injuries, and all the known facts immediately preceding his death. This being so, the question was properly for jury determination as to whether the injuries received materially and directly contributed to the immediate cause of death.

The trial court did not err in denying the motion for new trial.

*Judgment affirmed. Gardner, P. J., Carlisle and Frankum, JJ., concur.*