## 58374. HARDISON v. CHASTAIN.

McMurray, Presiding Judge.

On October 12, 1978, K. W. Chastain was stopped for speeding by a police officer of the City of Atlanta while Chastain was driving a motor vehicle on a highway inside the city limits. Whereupon, due to certain circumstantial evidence (odor of alcohol, etc.) the officer felt he had reasonable cause to believe Chastain was under the influence of alcohol, arrested him, took him to the police department and advised him of his rights under the implied consent law that he was required, according to Code Ann. § 68B-306 (Ga. L. 1975, pp. 1008, 1028) to submit to state administered chemical tests for the purpose of determining alcoholic or drug content. Also, he was advised under Code Ann. § 68A-902.1 (Ga. L. 1974, pp. 633, 672; 1977, p. 1036) that he had the right to any additional chemical tests of his blood, breath, urine, or other bodily substances taken as follows: "by personnel of your own choosing if you so desire," but that "[t]his additional test in no way satisfies your obligation to submit to the State administered chemical tests. Should you refuse my request that you submit to the State administered chemical tests, your driver's license will be suspended for a period of six months." Upon direct request to submit to the tests, Chastain stated, "I'll take the blood test." He was taken to Grady Hospital to take the blood test. Subsequent events as shown by the implied consent addifavit, as deposed by the arresting officer, indicated that Chastain "refused to submit" to the chemical test.

The record does not disclose a suspension of his driver's license per se, but Chastain did request a hearing relevant to a suspension. A hearing was held, and the hearing officer determined that all the provisions of the Implied Consent Law were present, and his license was suspended. This finding was reviewed by the Department of Public Safety and the commissioner, and in each instance sustained.

On appeal to the superior court, the appeal was

sustained after reviewing the record, the superior court holding that Chastain's driver's license should not be subject to suspension. The commissioner of the Department of Public Safety appeals. *Held:*

The sole issue here is whether Chastain refused to take the test when he arrived at Grady Hospital. The record discloses the arresting officer testified that he was later notified by Grady Hospital personnel "to come down to sign . . . [a] . . . refusal." He did not have a conversation with Chastain at Grady Hospital but was advised that Chastain had "made the statement that he was going to get a lawyer to see about it." However, he did testify he later heard "Chastain make the statement [to Grady personnel] that he was going to get a lawyer and look into this before he submitted to anything."

Chastain's testimony at the hearing was that he never refused to take the test but that when he arrived at Grady Hospital he made a request to get "in touch" with his lawyer and to make a telephone call. He testified: "I didn't really know, at the time, exactly what I should do and I wanted to talk to my lawyer. I felt like then, I guess I still feel like that I should have been entitled to at least talk to my lawyer on the telephone." He was then asked to come into a certain room thinking he was to be allowed to use a telephone. Instead he found himself in a small room with other men. He was not allowed to telephone, never refused to take the blood test, and on one occasion was told "It's too late." When he was finally allowed, at the Atlanta city jail, to call his lawyer, he was advised by him to "take the blood test." But again he was advised "it was too late."

One is not entitled to advice of counsel when confronted with a decision as to whether to submit to a test under the Implied Consent Law. *Davis v. Pope,* 128 Ga. App. 791 (1) (197 SE2d 861); *Cogdill v. Dept. of Public Safety,* 135 Ga. App. 339, 340 (2) (217 SE2d 502); *Dept. of Public Safety v. Maples,* 149 Ga. App. 484 (1) (254 SE2d 724). But the Implied Consent Law is in derogation of the common law and must be strictly construed and followed. Only when the person has "refused to submit to the test *upon the request of the law enforcement officer"* shall his license be suspended. (Emphasis supplied.) The testimony of Chastain is that he never refused to take the test but

was not allowed to take the test. This testimony is not refuted. A simple question at Grady Hospital by the arresting officer as to whether or not he was refusing the test would have settled this issue. The law enforcement officer did not ask it but took the words of others that he had refused to take the test. See Code § 38-301; *Chedel v. Mooney,* 158 Ga. 297, 299 (7) (123 SE 300); *Martin v. State,* 102 Ga. App. 216 (1) (115 SE2d 859). Compare *Cofer v. Schultz,* 146 Ga. App. 771 (247 SE2d 586).

*Judgment affirmed. Banke and Underwood, JJ., concur.*

SUBMITTED SEPTEMBER 24, 1979 — DECIDED OCTOBER 10, 1979.

*Arthur K. Bolton, Attorney General, William B. Hill, Jr., Assistant Attorney General,* for appellant.
*Robert A. Elsner,* for appellee.