## A93A0236. BOWMAN v. PALMOUR.
### (433 SE2d 380)

ANDREWS, Judge.

We granted the application for discretionary appeal of the Commissioner of the Department of Public Safety to review the superior court's reversal of the department's affirmance of the suspension of Palmour's driver's license. We reverse.

1. When sitting in review of a department's affirmance of an administrative decision, the superior court sits only as an appellate court. *Ga. Power Co. v. Ga. Pub. Svc. Comm.*, 196 Ga. App. 572, 579-580 (5) (396 SE2d 562) (1990). It may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. OCGA § 50-13-19 (h) (5), (6); *Ga. Power Co.*, supra. The "any evidence" test is the applicable touchstone and the presence of conflicting evidence is sufficient to satisfy that test. Id.

Viewing the evidence presented at the administrative hearing in the light favorable to the. decision rendered,[1] it showed that Mrs. Palmour was driving north on Highway 27 in Rome about 9:30 p.m. when she was approached by Rome Police Officer Lively in his cruiser going south. From observing her van, Officer Lively concluded that she was exceeding the posted 40 mph speed limit. He turned his car around and began to follow her. He then observed the van veer over the center yellow line and decided to pull it over. He activated his blue lights just as the van approached an intersection where it ran a red light. The van then pulled over and Officer Lively detected an odor of alcohol as he approached the driver's window. Mrs. Palmour exited the van and moved to the rear of the van. The officer observed that her eyes were bloodshot and watery and that the odor of alcohol was detectable in her presence. He also observed a "swayingness" in her. He asked her to blow into an alco-sensor, but she refused. He then inquired if she had had anything to drink, to which she responded negatively. He advised that the sensor would only detect alcohol and she had nothing to worry about if she had consumed none. She then advised that she had consumed a glass of wine with dinner and again refused to blow on the alco-sensor. She was also using a breath mint.

At that point, the officer asked if she would do field tests, advising her that she did not have to. She refused. She was placed under arrest for DUI and was read the implied consent warnings. She was asked if she would comply with the state administered test, but made no response. She was placed in the rear of the cruiser while Officer Lively requested a female officer who came to the scene to search

---

[1] This is the required standard for both the superior court in its review and this court in ours. *Ga. Power Co.*, supra at 581.

Mrs. Palmour and handcuff her.

Mr. Palmour, an attorney and solicitor of an adjoining county, was behind his wife in another vehicle. He saw her pulled over, went down the road to turn around, and returned. By this time, the second officer was at the scene. Mr. Palmour testified that he asked to speak with Mrs. Palmour and was refused. Officer Lively, however, testified that the only request he made at the scene was to be allowed to take her home. She had their three small children in the van with her and the officer told Mr. Palmour that he could take the van and the children and meet his wife at the sheriff's office.[2]

Mrs. Palmour was taken into the sheriff's office where Officer Lively activated the Intoximeter 3000 and asked her to blow into it. She again refused to be tested. Officer Lively then executed the affidavit which resulted in the six-month suspension of her driver's license, the subject of review below and here.

2. While Mrs. Palmour does not dispute her refusal to be tested, she contends that she had the right to consult with her attorney/husband both at the scene and at the jail before the test was administered. This position was accepted by the superior court, based solely on two articles in American Law Reports.

Contrary to the position taken by other courts, in Georgia "there is no right to have counsel present when a person is asked to submit to a chemical test and when [she] is asked to comply with the implied consent law. *Cogdill v. Dept. of Pub. Safety,* 135 Ga. App. 339 (2) (217 SE2d 502) (1975)." *Rawl v. State,* 192 Ga. App. 57, 58 (4) (383 SE2d 903) (1989) (authored by now Supreme Court Justice Benham). E.g., *Courson v. State,* 184 Ga. App. 793, 794 (3) (363 SE2d 41) (1987); *Billingsley v. State,* 183 Ga. App. 850, 852 (2) (360 SE2d 451) (1987); *Oyler v. State,* 175 Ga. App. 486, 487 (1) (333 SE2d 690) (1985); *Hardison v. Chastain,* 151 Ga. App. 678, 679 (261 SE2d 425) (1979).

*Judgment reversed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED JUNE 28, 1993.

*Michael J. Bowers, Attorney General, Daryl A. Robinson, Senior Assistant Attorney General, Kay D. Baker, Staff Attorney,* for appellant.

*Cook & Palmour, Bobby Lee Cook, Jr., Westbrook & Vines, Carl-*

---

[2] Much is made over the fact that when Officer Lively was asked by Mrs. Palmour what would happen to the children she was advised that, if there were no family member to take them, DFACS would be called. It is unclear what other procedure would have been more appropriate if the father had not arrived.