Argued December 3, decided December 17, 1912.

## STATE v. SCOTT.*

(128 Pac. 441.)

**Indictment—"Communication."—"Threat."**

1. An indictment charging that defendant "did by a written communication threaten injury to A. G., etc.," is a sufficient allegation that there was a delivery to A. G., being substantially the words of the statute (Section 1929, L. O. L.); a threat being a declaration of a purpose to work an injury to another and designedly put forth by the individual making the threat, either directly or indirectly, so as to operate upon the mind of the person threatened, and a "communication" being that which is communicated or imparted; intelligence; news; a verbal or written message; and these two words in the indictment include not only the utterance of the threat, but also the bringing the same to the notice of the person threatened.

---

*The general question of the comparison of handwriting is treated in an elaborate note in 62 L. R. A. 818.

The authorities on the subject of the competency of handwriting as standard for comparison, are reviewed in a note in 63 L. R. A. 428.

As to admission of document not otherwise relevant as standard of comparison of handwriting, see note in 18 L. R. A. [N. S.] 520.
                                                    REPORTER.

**Criminal Law—Evidence—Statements Before an Officer.**

2. Section 1781, L. O. L., providing that at a preliminary examination the magistrate must inform defendant that he may make any statement he sees fit in explanation, but that his failure to do so cannot be used against him, relates to judicial confessions and not to extrajudicial confessions, hence does not relate to a writing made to the district attorney, and such a writing, made under no compulsion and without any inducements, is admissible in evidence.

**Criminal Law—Evidence—Handwriting.**

3. Under Section 788, L. O. L., providing that evidence respecting the handwriting may be given by a comparison with writings admitted or treated as genuine by the party against whom the evidence is offered, a writing voluntarily made by defendant in the sheriff's office was admissible.

**Threats—Instructions.**

4. In a prosecution for threats under Section 1929, L. O. L., both the authorship and promulgation of the offending document must be brought home to the defendant; and to instruct that, if the jury were satisfied that defendant wrote the instrument, "or the communication was delivered," to the party threatened, he should be found guilty was error.

From Douglas:   JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE BURNETT.

The charging part of the indictment in this case is in the following language:

"The said Walter J. Scott on the 23d day of February, A. D. 1911, in the county of Douglas and State of Oregon, then and there being, did then and there unlawfully and feloniously by a written communication threaten injury to the person and property of Antone Gallagher and to the wife of Antone Gallagher, with intent thereby to extort a pecuniary advantage from said Gallagher, which written communication was then and there in words following:

" 'Mr. Antone Gallagher—Sir: You will on getting this draw 250 dollars and take the same home with you, be sure it is all gold money, put it all in one package and leave it on top of one of the posts by the ford next to that big fir tree where you pasture your horse. Be sure

and do as you are told on the same day as you get this for you are watched all the time and if you try to split on us we will get you sure. Have the money at the place stated Friday night, Feb. 24, at dark. Mum is the word for if this gets out we wont leave enough of you to hold a funeral over, nor your buildings, nor your wife neither. Now don't try to watch us or try to get someone else to because you won't know what hurt you if you do just do as we tell you and then go home and don't tell nobody if you want to live to a ripe old age."

The defendant had a jury trial resulting in a verdict of guilty, and appeals from the subsequent judgment.

                                                    REVERSED.

For appellant there was a brief and oral arguments by *Mr. George Neuner, Jr.,* and *Mr. Oliver P. Coshow.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, and *Mr. George M. Brown,* District Attorney, with an oral argument by *Mr. Brown.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. So far as applicable to this case, the statute (Section 1929, L. O. L.) under which this indictment was drawn reads thus:

"If any person either verbally or by a printed or written communication shall threaten any injury to the person or property of another or that of any person standing in the relation of parent or child, husband or wife, sister or brother to such other * * with intent thereby to extort any pecuniary advantage or property from such other, * * such person upon conviction thereof shall be punished. * *"

The defendant contends that the indictment is fatally defective because it does not allege that the written communication was ever delivered to the person said to have been threatened or to any other person. In alleging the criminal act charged, it is sufficient ordinarily to follow the words of the statute defining the crime. *State* v.

*Light,* 17 Or. 358 (21 Pac. 132) ; *State* v. *Shaw,* 22 Or.
287 (29 Pac. 1028). By the terms of Section 1448,
L. O. L., an indictment is sufficient if it can be under-
stood therefrom, among other particulars, "that the act
or omission charged as the crime is clearly and distinctly
set forth in ordinary and concise language without repe-
tition and in such manner as to enable a person of com-
mon understanding to know what is intended." Here
the words of the statute are used in charging the threat,
and the means employed to give utterance to the threat
are also set out in the indictment in a way that would at
once challenge the attention of the person accused and
inform him of the nature of the charge intended to be
preferred. For the purposes of the statute here involved,
a threat may be defined to be a written or verbal declara-
tion of the purpose of the one making it to work an
injury to the person, property, or rights of another, and
designedly uttered or promulgated by the individual
making the threat, either directly or by some agency
set in operation by him or with his consent in such a way
as to bring the threat to the notice of or cause it to
operate upon the mind of the person threatened. 8 Words
and Phrases, 8964. Moreover it is alleged that this
threat was accomplished by a written communication.
Webster defines "communication" to be "that which is
communicated or imparted; intelligence; news; a verbal
or written message." The use of the words "threat" and
"communication" in the indictment in their very nature
include not only the utterance of the person making the
threat, but also the bringing the same to the notice or
attention of the person threatened. In matter of allega-
tion, the indictment is sufficient to include all the ele-
ments contemplated by the statute. The objection urged
by the defendant in this respect involves only the ques-
tion of proof, not of pleading. The language employed
sums up all the elements of the offense charged in con-

cise form, and dispenses with pleading the evidence to prove the accusation. It is not claimed by the defendant that there was no evidence tending to show a delivery of this communication to Gallagher, hence the objection to the indictment can avail him nothing here.

2. It appears by the bill of exceptions that specimens of the handwriting of the appellant, made immediately after his arrest in the presence of the sheriff and his deputy and the district attorney, were used as a basis for comparison with the communication mentioned in the indictment for the purpose of determining whether or not the defendant wrote the letter described. The defendant objects that such a writing could not be used in any event, and likewise that it was obnoxious to the law because it was not shown to have been written voluntarily. As to the second objection, the testimony narrated in the bill of exceptions is to the effect that the defendant was arrested and taken to the sheriff's office, and while there the district attorney came in and said to him, "Scott, you know who I am?" And he answered he did not, and the district attorney then said, "I am the district attorney, and any statement that you make must be made voluntarily. You are not obliged to make any statements, not compelled to answer any questions that I may ask you." The witnesses state that the defendant then went ahead and did the writing voluntarily. The accused relies principally upon the case of *State* v. *Andrews,* 35 Or. 391 (58 Pac. 765) in this connection. That case, however, depends upon Section 1781, L. O. L.:

"When the examination of the witnesses on the part of the State is closed the magistrate must inform the defendant that it is his right to make a statement in relation to the charge against him; that the statement is designed to enable him if he sees fit to answer the charge and explain the facts alleged against him; that he is at liberty to waive making a statement and that his waiver cannot be used against him on the trial."

That case and the section quoted refer to judicial confessions made in the presence of a magistrate, and in such instances the procedure laid down by the statute must be followed if any validity is to be given to the judicial confession. The statute, however, does not refer to or govern extrajudicial confessions made to any person although he be an officer. Of course, if any inducement is held out to the defendant influencing him to make the confession, or any compulsion is used to produce that result, the confession is without value against him. Such is the doctrine of *State* v. *Wintzingerode,* 9 Or. 153; *State* v. *Garrison,* 59 Or. 440 (117 Pac. 657). But if it shall appear to the trial court that the statement of the defendant was made voluntarily without the influence of hope or threats, the statement is admissible even though the defendant be in the custody of an officer. *State* v. *Blodgett,* 50 Or. 329 (92 Pac. 820); *State* v. *McDaniels,* 39 Or. 161 (65 Pac. 520). Enough is shown by the bill of exceptions to make the writing admissible as against the objection that it was obtained from the defendant either by threats or inducements.

3. It is urged by the defendant that the writing mentioned could not be used in any event as a standard of comparison by which to determine whether or not the letter quoted in the indictment was written by the defendant. The authorities cited by the council for the defendant in some instances depend upon a different statute or upon the absence of any statute upon the subject. Our Code, however, has fixed the rule thus:

"Evidence respecting the handwriting may also be given by a comparison made by a witness skilled in such matters, or the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered." Section 788, L. O. L.

The rule established in *Munkers* v. *Farmers' Ins. Co.,* 30 Or. 211 (46 Pac. 850), and followed in the case of *State* v. *Branton,* 49 Or. 86 (87 Pac. 535), is thus stated:

Sig. 15

"Under this statute it is clear that any writing which is admitted to be or treated as genuine by the party against whom the evidence is offered may be used for the purpose of comparison with the writing or signature in question, although it may not be admissible in evidence for any other purpose."

It has been shown to the satisfaction of the circuit court that the writing by the defendant in the sheriff's office was performed voluntarily. The matter there written was certainly treated by the defendant as genuine, having been inscribed by himself in person, and hence, under the rule stated above, was admissible as a proper standard of comparison with the writing mentioned in the indictment.

4. Thus far the procedure of the circuit court as disclosed by the records is without fault. But in the charge to the jury the court gave this instruction:

"However, upon the other hand, if you are satisfied beyond a reasonable doubt, after having considered all the evidence submitted in this case, that the defendant wrote the instrument or writing which is in evidence here and set forth in the indictment, or the communication was delivered to Mr. Gallagher, *. * it would be equally your duty to find the defendant guilty of the crime charged."

It was competent to prove under the allegations of the indictment that the defendant delivered, or caused to be delivered, a threatening communication to Mr. Gallagher, but to sustain the indictment it was necessary not only to show that the defendant was the author of the threatening cummunication, but also that he delivered it himself, or was the cause of its being so delivered as to bring it to the notice of the threatened person. Both the authorship and promulgation of the offending document must be brought home to the defendant. The words of the charge "or the communication was delivered to Mr. Gallagher" make it possible to convict the defendant on the delivery of the communication by some one else

without his authority. It is possible that the error occurred by inadvertence or by a slip of the tongue, but it is none the less fatal to the conviction. Other errors are assigned respecting the charge of the court and about the methods of delivering expert testimony, but we deem them unimportant.

For the mistake noted, however, the judgment must be reversed.                                    REVERSED.