Argued October 4, 1965, affirmed January 26, 1966

# STATE OF OREGON *v.* FISHER
### 410 P. 2d 216

*Thomas D. Kerrigan,* Portland, argued the cause and filed a brief for appellant.

*George M. Joseph,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were George Van Hoomissen, District Attorney, and Tom P. Price, Deputy District Attorney, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

PERRY, J.

The defendant was convicted of the crime of uttering a forged bank check and appeals.

The record discloses that defendant was arrested in Portland on the morning of June 29, 1964, and was transported from the East Precinct police station to the Central police station. After having an ankle attended to by someone at the Central police station, the defendant was asked to give a sample of his handwriting by filling out a questionnaire, designated by the police an exemplar. Defendant filled out the exemplar in his own handwriting. At the trial this exemplar was introduced for purposes of comparing the handwriting thereon with that of the check uttered by the defendant.

The defendant contends that the trial court erred in admitting into evidence the exemplar in that after his arrest his privilege against self incrimination contained in the Fifth Amendment to the Constitution of

the United States was violated in the obtaining of the exemplar because, although he was effectively advised of his right to remain silent, he was not advised of his right to legal counsel which this court held was a Sixth Amendment right under the Constitution of the United States. *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482.

■ It must be conceded that the interpretation by the majority of this court of *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L ed2d 977, as expressed in *State v. Neely,* supra, grants a person under arrest the constitutional right to be informed of his right to remain silent and to his right of counsel, and, therefore, until he has been informed of these rights no questioning for the purpose of obtaining oral admissions or confessions of guilt is permissible.

The narrow question in this case then is whether the police may obtain from a person under arrest evidence of individual characteristics, which may later be used as evidence against him, without first informing him of his right to counsel.

2. It seems to be well established that requiring a defendant to supply evidence of his identity does not violate the Fifth Amendment of the Constitution of the United States. He may be fingerprinted, measured and photographed. *United States v. Kelly,* 55 F2d 67, 83 ALR 122, and cases cited therein.

■ Also, even in the trial of a case, a defendant may be required to exhibit himself in different costumes, *Holt v. United States,* 218 US 245, 31 S Ct 2, 54 L ed 1021, to stand up and remove his glasses, *Rutherford v. State,* 135 Tex Crim 530, 121 SW2d 342, or to reveal tattoo marks on his arm, *State v. Ah Chuey,* 14 Nev 79, 33 Am Rep 530.

■ It seems now to be a well accepted fact that handwriting is almost as individualistic and identifying as are fingerprints.

■ If no constitutional right is denied a lawfully arrested individual in requiring him to do acts which may disclose by comparison that he is the person that committed a crime, we are unable to find a valid reason for holding that a person whose handwriting has been secured for comparison has had his constitutional right to counsel and privilege against self incrimination invaded. *People v. Harper,* 115 Cal App2d 776, 252 P2d 950; *Stanfield v. United States,* 350 F2d 518.

The judgment is affirmed.

GOODWIN, J., dissenting.

While I am not prepared to discuss in this case all the circumstances under which the state, in the absence of counsel, may or may not utilize pretrial discovery in criminal cases, I disagree with the majority's holding that a suspect can be compelled to manufacture the evidence necessary to prove that his hand wrote a forgery.

Whenever the cooperation of the accused is sought by the prosecution in order to obtain evidence to be used against him, a potential Fifth-Amendment question arises. If the accused lawfully could have invoked his privilege against self-incrimination, a potential issue on the right to the assistance of counsel under the Sixth Amendment also arises. In other words, we must decide whether an attorney properly could have advised the defendant not to cooperate. If so, we must decide whether the defendant was entitled to such advice.

In *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d

482 (1964), we held that a suspect must know that he has the right to counsel and must waive that right before he can be interrogated. If the *Neely* case correctly construed the Sixth Amendment when interrogation was a police objective, and if the production of handwriting comes within the protection of the Fifth Amendment, the suspect ought to have an equally valid right to counsel before he can be induced to create incriminating evidence in the form of a written example of his penmanship.

The majority holds that the Fifth-Amendment privilege does not apply to nontestimonial acts. There is textbook authority to support a holding that counsel is not necessary because consent is not necessary. See, e.g., 8 Wigmore, Evidence 397, § 2265 (McNaughton rev, 1961). If consent indeed is not necessary, I would agree that there is no right to have counsel tell the accused that he has no choice. Thus, if a suspect can be compelled, against his will, to prepare a portion of the state's evidence, counsel could have done him no good. If such is the law, no protected right has been violated. Early Oregon cases seem to proceed on the theory that the production of the evidence could not be compelled, but that the privilege could be waived. See *State v. Scott,* 63 Or 444, 128 P 441 (1912), and cases discussed therein. See also *Rex v. Voisin,* [1918] 1 K B 531 (CA), 1 ALR 1298.

Virtually all the authority for the proposition that the Fifth Amendment does not cover compulsory handwriting is based upon a purported analogy between handwriting and the involuntary surrender of such other incriminating evidence as fingerprints, footprints, hair, blood, or objects secreted in the suspect's body. While the distinction has been obscured

in many of the decided cases,[1] and deprecated by some commentators,[2] I believe there is a distinction in principle between the taking of existing evidence which requires no cooperation by the accused[3] and forcing the accused to create evidence which, without the intelligent cooperation of the accused, would not exist.[4] The distinction is ably set forth, with a review of the authorities, in *United States v. Eggers,* 3 USCMA 191, 11 CMR 191 (1953).

With reference to blood, fingerprints, photographs, inspection of tattoos, and the removal of substances from body cavities, the police may search, seize, and extract without the consent of the defendant, because

[1] Cases are collected in McCormick, Evidence 126 and 264 (1954). It is frequently pointed out by the writers who defend the compulsory surrender of incriminating evidence (such as blood, narcotics retrieved from body orifices, and the like), that this practice does not offend the precise wording of the Fifth Amendment: No person shall "be compelled in any criminal case to be a witness against himself." The writers argue that the use of the word "witness" limits the reach of the amendment to testimonial compulsion. This argument appears to overlook the possibility that existing evidence is, essentially, a Fourth-Amendment problem. When the question involves the use of compulsion in the creation of evidence, the Fifth-Amendment privilege is not so easily ignored.

[2] See, e.g., Falknor, *Evidence,* 1953 Ann Survey Am L 755.

[3] When an X-ray photograph of a suspect showed three gold rings in his large intestine, the police administered an enema. The Texas Court of Criminal Appeals did not think this procedure offended the Fifth Amendment, and, since the question was primarily a Fourth-Amendment problem, held that the procedure was reasonable and thus did not offend the Fourth Amendment. David Ash v. The State, 139 Tex Crim 420, 141 SW2d 341 (1940). But, cf., Rochin v. California, 342 US 165, 72 S Ct 205, 96 L Ed 183, 25 ALR2d 1396 (1952), holding involuntary emetics unreasonable.

[4] Compare compulsory test for pregnancy, approved where no cooperation required, Villaflor v. Summers, 41 Phil 63 (1920), with compulsory sample of handwriting, disapproved where intelligent cooperation required, Beltran v. Samson and Jose, 53 Phil 570 (1929).

his cooperation is not required. Thus, the police may use reasonable force so long as they operate within the limits of the Fourth Amendment. See cases collected in Carden, *Federal Power to Seize and Search Without Warrant,* 18 Vand L Rev 1 (1964).

In the case of evidence which cannot be obtained without the defendant's cooperation, however, a Fifth-Amendment problem arises. We assume that the police cannot beat or starve a suspect into cooperation. *People v. Matteson,* 36 Cal Rptr 373, reversed on other grounds, 61 Cal2d 466, 39 Cal Rptr 1, 393 P2d 161 (1964). A court order would therefore be necessary to compel the production of the desired evidence. I have been unable to find a case in which a court has held that the contempt power is available to assist the prosecution in compelling the production of evidence of this kind.

It is not a satisfactory answer to say simply that the privilege does not cover handwriting because it does not cover fingerprints. For many years courts thought the privilege did not prevent a comment on the defendant's failure to take the stand. Such ancient "truth has proved uncouth." See *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed2d 106 (1965).

The United States Supreme Court held long ago that the Fifth Amendment interacts with the Fourth to deny the government the right to seize existing incriminating documents from the house or the person of the suspect. *Boyd v. United States,* 116 US 616, 6 S Ct 524, 29 L Ed 746 (1886). This court should not now hold, for the first time, that a suspect whose personal documents cannot be seized by police, with or without a warrant, solely for use as evidence against him, may nonetheless be compelled to manufacture

documents at the government's pleasure for the same purpose. Our own earlier cases would indicate a contrary rule. *State v. Scott,* supra.

Further, it seems inconsistent with the Fifth Amendment as recently construed by this court in confession cases to say that, while a suspect cannot be forced to manufacture oral evidence, he can be forced to manufacture written evidence. In my view, if Neely was entitled to be advised of his right to counsel, the defendant in the case at bar had the same right.

I dissent.