Argued and submitted February 29, reversed and remanded for new trial July 25, 1984

# STATE OF OREGON,
*Respondent,*

*v.*

# JERRY L. SEARS,
*Appellant.*

(J83-0655; CA A29450)

684 P2d 1240

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

Defendant appeals his conviction for possession of a forged instrument, contending that the trial court erred in refusing to grant his motion to suppress certain evidence. The sole issue is whether the search of a manila envelope in which defendant's personal property was placed when he was booked into jail after his arrest on a different charge seven weeks earlier constitutes a lawful search incident to arrest. Because we hold that it does not, we reverse and remand.

On February 9, 1983, defendant was stopped for a traffic violation. He was unable to produce a driver's license but, when asked for identification, he presented a checkbook in the name of James Fairbanks III. The incident resulted in defendant's arrest for driving while under the influence of intoxicants, giving a false name to a police officer and bribe giving. At the time he was booked into jail, his checkbook, wallet, clothing and other possessions were taken from him and were held by his jail custodians. Approximately seven weeks later, while defendant was in custody, a police officer received a call from James Fairbanks II, the father of James Fairbanks III. The father told the officer that his son, who was also in jail at the time, had asked him to pick up defendant's clothing to be washed, that he knew that defendant had been arrested for giving a false name and that, if there was evidence in the clothing, he did not want to take it. He also indicated that forged checks on his son's closed accounts had been turning up at various stores.

After receiving that call, the officer searched the manila envelope in which defendant's personal effects were being held at the jail. He found a checkbook in the name of James Fairbanks III and, in defendant's wallet, a check for $73.76 bearing a signature purporting to be that of James Fairbanks III and several pieces of Fairbanks' identification. Either the same or the following day, defendant was convicted of driving while under the influence of intoxicants and was sentenced to 90 days in jail with credit for time served. He was acquitted on charges of giving false information and bribe giving. The evidence found in the search of the property envelope provided the basis for defendant's subsequent conviction for criminal possession of a forged instrument, from which this appeal is taken.

Defendant challenges the search of the envelope as violating both state and federal constitutional prohibitions against unreasonable searches or seizures. In *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982),[1] the Supreme Court announced its intention to analyze the search-incident-to-arrest exception to the warrant requirement of Article I, section 9, of the Oregon Constitution independently of federal standards governing that exception under the Fourth Amendment. *Caraher* states that, in order to extend beyond the immediate necessity to protect the arresting officer or to prevent escape or the destruction of evidence, a search or seizure of effects incident to arrest must relate to the offense which prompts the arrest. 293 Or at 759; *see also State v. Lowry,* 295 Or 337, 345, 667 P2d 996 (1983). It must also be reasonable as to time, space and intensity, "based upon the entire factual situation." 293 Or at 758, citing *State v. Chinn,* 231 Or 259, 273, 373 P2d 392 (1962). In upholding the search of Caraher's purse as incident to her arrest for possession of a controlled substance, the court reasoned that both the nature of the crime and the circumstances of the arrest made it reasonable to believe that she would carry contraband in her purse. Moreover, because the search was close in time and space to the arrest, it met the reasonableness standard enunciated in *Chinn.* 293 Or at 759.

■     There can be little doubt that, if the arresting officer had searched defendant's wallet for identification at the time of the arrest and had discovered a forged check, the search would have met the reasonableness standard of *Caraher* and *Chinn.* However, the seven week interval between the arrest and the search precludes the search from being "incident" to arrest under *Caraher,* and the state does not contend that there were exigent circumstances.

■     The state does contend, however, that if the search may not be justified as incident to the February 9 arrest, it

[1] Because *State v. Caraher, supra,* established a method of analysis for the search incident to arrest exception that is independent of the federal constitution, previous cases in which the exception was analyzed solely under Fourth Amendment standards are not controlling here. *See State v. Brown,* 291 Or 642, 634 P2d 212 (1981); *State v. Addicks,* 30 Or App 249, 566 P2d 1212 (1977), *rev den* 280 Or 521 (1978). Notably, however, in *State v. Brown, supra,* the court stated that "from the continuing nature of processing of the defendant, we find the search of the box was part of the arrest itself or 'reasonably contemporaneous' with it." 291 Or at 651.

may be upheld, nevertheless, because the officers had acquired information on May 28 giving rise to probable cause to believe that defendant had committed another crime. As we understand it, the argument is that, because the police could have arrested defendant for the new crime, the search was incident to that presumed arrest, because the evidence sought was related to the new offense. The record, however, does not support a finding of probable cause to believe that defendant had committed the crime of forgery. There is no evidence that the police knew Fairbanks II or, for that matter, that they knew he was who he said he was. Furthermore, part of the information he imparted to the police was based on what his son, who was then in jail, had told him, and there is no evidence that the officer had reason to believe either the father or son.

Here, the evidence held in the property envelope was not of an ephemeral nature, defendant did not have access to the envelope and he could not have removed items from it which would have endangered officers' safety. In short, there was no justification for the failure to obtain a search warrant beyond the fact that it was inconvenient to do so or that the police did not believe that they could obtain one on the basis of information that they had. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

Traditionally, the beacon light of constitutionality in search and seizure cases has been the notion of reasonableness. Unfortunately, *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), appears to be fast eclipsing that light, and the resulting confusion has caused quite a commotion in the Oregon criminal justice system. Notwithstanding that commotion, I am still convinced that reasonableness can provide a useful standard for our resolution of these issues, and I find that the police acted reasonably in this case. In any event, I do not think that even a strict application of *Caraher* requires suppression under the evidence.

Looking to the specific holding in *Caraher,* searches incident to custodial arrest must be justified either as (1) necessary to protect the arresting officer, (2) a precaution to

avoid the destruction of evidence, or (3) reasonably related to the crime for which the defendant is arrested. In this case, the focus is on the third type of justification: the "reasonable relationship" between the search and the original charge. In determining whether the search is justified, an *objective* test applies. The permissible scope of a custodial search is not controlled by the searcher's personal motivation or subjective justification, but rather by the objective circumstances at hand. *See State v. Tucker,* 286 Or 485, 595 P2d 1364 (1979); *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969). Here, whatever the officer's own motivation for the search may have been, the fact is clear that the search was objectively justified under the circumstances. *What better place to look for evidence of furnishing a false name than the arrested person's wallet and checkbook?* Clearly, the state prevails on this first step in the *Caraher* analysis.

Going then to the second step, the question is whether the search was *reasonable* under the totality of the circumstances. Quoting *State v. Chinn,* 231 Or 259, 273, 373 P2d 392 (1962), the court prescribed assessment of the reasonableness based on "time, space and intensity" and "the entire factual situation." *State v. Caraher, supra,* 293 Or at 758. Unquestionably, had the arresting officer fully searched defendant's wallet and discovered the forged check at the time of the February 9 arrest, the reasonableness test would have been met. The majority concedes as much. 69 Or App at 263. Thus, the question in this case boils down to whether the several week delay and the transfer of the items to the jail were fatal to the search. On the basis of "the entire factual situation," and the underlying rationale of *Caraher,* I would say, "No."

We have a situation where (1) a full search of the item would have been permissible at the time of the arrest; (2) the actual search had been extensively delayed; and (3) both the item and the arrestee have remained in uninterrupted police custody. Although the "entire factual situation" of such a continuous custodial period may be much broader than the narrow facts presented in *Caraher,* the "time, space and intensity" of this search necessarily included the later events, because the "time, space and intensity" of the arrest obviously broadened as well. Defendant's "arrest" was not an isolated instant but a continuing process, subject to custodial search

on a continuing basis. To require the contrary, that is, to limit the "arrest" to the moment of seizure, is to defy the reality of the custodial status. Just as defendant was arrested from February 9 through March 28, so, too, would he be subject to custodial search throughout that time. Also, just as the police could search his personal effects on February 9, so, too, they could search them on March 28, so long as the items remained his personal effects and were not left at the scene of the initial arrest.

Ultimately, the scope of a custodial search is grounded on "reasonableness." It is not unreasonable to search an arrestee's property without a warrant when that property bears a close relationship to the offense, when the arrest continues and the property, albeit in police possession, is simply transferred to the site of the arrestee's custody. In the light of *Caraher's* reliance on the "entire factual situation," it seems reasonable to extend the time and place of the search along with the correlative extension of the time and place of the arrest. In this case, it makes no sense at all to forbid the police from doing something on March 28 that they could have done on February 9, when there has been no substantive change in the status of defendant or his property.

Relying on *reasonableness,* I dissent.