Argued and submitted December 23, 1994, affirmed August 23, 1995

# STATE OF OREGON,
*Appellant,*

*v.*

# BYRON FRANKLIN BARNUM,
*Respondent.*

(92 CR 0200; CA A79301)

902 P2d 95

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

David E. Groom, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Byron Franklin Barnum filed the supplemental brief *pro se*.

Before Warren, Presiding Judge, and Edmonds and Armstrong,* Judges.

ARMSTRONG, J.

Warren, P. J., concurring.

Edmonds, J., concurring.

.

.

.

---

* Armstrong, J. *vice* Landau, J.

## ARMSTRONG, J.

Defendant was indicted on two counts of first degree arson, four counts of first degree burglary and one count of second degree burglary. The state appeals from a pretrial order suppressing evidence seized pursuant to ten search warrants. We review for errors of law, ORS 138.220, and affirm.

In January 1991, defendant was arrested during a break-in at a doctor's office. Defendant's arrest caused police to reopen an earlier investigation that had involved a series of threatening phone calls and letters sent to one of the doctor's employees and other letters forged on the doctor's stationery. Based on their investigation, police believed that defendant was the person who had composed all of the letters.

In February 1991, police searched defendant's home. They seized several legal files belonging to a local law office and a two-page letter that appeared to be handwritten by defendant. The police contacted the law firm, and it confirmed that the files had been stolen from its office along with some of its letterhead stationery. Two letters had been forged on the stationery.

Police officers sent the handwritten letter seized from defendant's home to the Oregon State Crime Laboratory (the lab) for analysis to determine whether defendant had forged the two letters on the legal stationery and the two letters on the doctor's stationery. The lab reported that the samples of defendant's handwriting did not contain enough handwritten material to determine whether defendant had written the forged letters. The lab suggested that the police send additional samples of defendant's handwriting for further examination.

In August 1991, defendant appeared in circuit court for a pretrial hearing on charges related to the break-in at the doctor's office. Officers Grow and Runyon attended the hearing. They intended to arrest defendant on a charge of theft by receiving, based on the stolen legal files recovered from his home. During the hearing, the detectives observed defendant writing on several sheets of paper and in a small spiral notebook. He later placed the papers in two manila folders and the notebook in his shirt pocket. At the conclusion of the

hearing, at the request of the prosecutor, the court ordered defendant to provide a handwriting exemplar.

As defendant was leaving the courtroom, the detectives approached him to escort him downstairs to the police station to provide the handwriting sample. Defendant refused. Runyon then arrested defendant on the charge of theft by receiving and seized the manila folders. As Runyon was handcuffing defendant, defendant motioned to his attorney to retrieve the notebook from his pocket. When the attorney tried to take the notebook, Grow seized it.

The officers briefly read the notebook and then sent it to the lab for comparison with the earlier letters. The examiner issued a report stating that the notebook had been examined and that, based on that examination, defendant was "not identified as writing the questioned documents." After the notebook was returned to the officers, they read it at length and discovered facts that led them to procure and execute ten search warrants. The officers never sought nor obtained a warrant to read the notebook.

Defendant moved to suppress all evidence that resulted from the officers' reading of the notebook. The trial court found that the officers had probable cause to believe that defendant's papers and notebooks contained evidence of a crime and that exigent circumstances justified the officers' seizure of the notebook. The court went on to find, however, that a "valid privacy interest still existed in the contents of the notebook," and that the officers' "detailed examination of the notebook after the seizure was improper without a search warrant." Thus, the court granted defendant's motion to suppress the contents of the notebook as well as all evidence derived from the contents.

On appeal, the state agrees with the trial court's conclusion that the initial seizure of the notebook was lawful, but argues that the trial court erred in determining that the subsequent reading of it was improper. It contends that the officers were entitled to peruse briefly the contents of the notebook to look for appropriate handwriting samples. The state concludes that, "[b]ased on the information they lawfully observed in plain view during the initial examination,

the police were entitled to scrutinize the entire contents of the notebook more closely at any time they wanted."

Defendant argues that all reading of the notebook was unlawful. Additionally, as an alternative basis for affirming the suppression order, defendant argues that the initial seizure of the notebook was unlawful, because there were not exigent circumstances to justify the warrantless seizure. Because we determine that the officers' conduct in reading the notebook to look for examples of defendant's handwriting constituted an unlawful search, and therefore affirm the trial court's suppression order, we need not address defendant's contention that the seizure was unlawful.

■ ■ Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their person, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

It provides safeguards against searches and seizures and, hence, protects both privacy and possessory interests. *State v. Owens*, 302 Or 196, 205, 729 P2d 524 (1986); *State v. Binner*, 131 Or App 677, 680, 886 P2d 1056 (1994). As a general rule, a warrantless search or seizure is *per se* unreasonable unless it falls within one of the limited exceptions to the warrant requirement. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991); *State v. Follett*, 115 Or App 672, 675, 840 P2d 1298 (1992), *rev den* 317 Or 163 (1993).

We first address whether the initial opening of defendant's notebook and the reading of its contents to look for handwriting samples was a "search" under the Oregon Constitution and, if it was, whether it was justified under one of the few, carefully circumscribed exceptions to the warrant requirement. Defendant argues that he had a valid privacy interest in the contents of his notebook and that this interest was invaded when the officers opened and read the notebook. The trial court agreed and determined that a "valid privacy interest still existed in the contents of the notebook."

■■ Under Article I, section 9, a search occurs when a government agent intrudes upon a person's privacy interests. *State v. Wacker*, 317 Or 419, 425, 856 P2d 1029 (1993); *State v. Rhodes*, 315 Or 191, 196, 843 P2d 927 (1992); *Owens*, 302 Or at 206. Here, the officers' actions constituted an intrusion. The officers opened the cover of the notebook, exposing the contents to an inspection that could not have been achieved without the intrusion. *See Rhodes*, 315 Or at 196-97 (opening car door from three to four inches open to completely open constituted a search). The question, then, is whether defendant had a privacy interest in the contents of the notebook.

■■ The privacy protected by Article I, section 9, is "not the privacy one reasonably *expects* but the privacy to which one has a *right*." *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988).

> "The privacy interests protected from unreasonable searches under Article I, section 9, are defined by an objective test of whether the government's conduct 'would significantly impair an individual's interest in freedom from scrutiny, *i.e.*, his privacy.' "

*State v. Wacker*, 317 Or at 425 (quoting *State v. Dixson/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988)). If no privacy interest is affected, no search has occurred under Article I, section 9.

The state argues that reading the notebook to look for handwriting samples did not intrude upon a valid privacy interest defendant had in the notebook and, thus, was not a search. It contends that handwriting exemplars, like fingerprints and voice exemplars, are evidence of identity and, as such, do not involve a privacy interest. *See State v. Fisher*, 242 Or 419, 422, 410 P2d 216 (1966) (handwriting); *State v. Davie*, 56 Or App 507, 517 n 5, 642 P2d 680, *rev den* 293 Or 146 (1982) (voice).

The basis of its contention is that "evidence of identity is not testimonial or communicative" and does not implicate a privacy right. *See Fisher*, 242 Or at 422 (court unable to find reason to hold that "person whose handwriting has been secured for comparison has had his constitutional * * * privilege against self-incrimination invaded"). Thus, the state reasons that the compelled production of a handwriting

exemplar does not implicate an Article I, section 9, privacy right.

■■ A determination that a handwriting exemplar is not testimonial or communicative would allow for its compelled production without violating the Article I, section 12, protection against self-incrimination. But the process by which the exemplar is obtained still must satisfy the strictures of Article I, section 9. For instance, just because an officer may fingerprint a suspect during booking does not mean that the officer may search any of that individual's belongings for fingerprint evidence without a warrant. Likewise, although a person may be required to speak in court to allow his or her voice to be heard, officers may not tape record the individual's telephone conversations to obtain voice exemplars without a warrant.

■■ There are ways to obtain handwriting samples that would not constitute a search. It would not have been a search to compel defendant to produce a standard handwriting exemplar pursuant to the trial court's order. The state's argument is that, because the object of the search, samples of defendant's handwriting, could have been obtained by conduct that would not have been a search, then the officers' conduct here was not a search. So stated, the state's argument is a non sequitur. That information "may be legally obtained does not mean that every method that can be used to obtain the same information does not invade an individual's privacy interest or constitute a search." *State v. Casconi*, 94 Or App 457, 460, 766 P2d 397 (1988). *See Campbell*, 306 Or at 172 (although following a car on public roadway not a search, attaching a tracking device to car was a search in violation of Article I, section 9).

■■ As the state admits, it is "unreasonable and unrealistic" to read words in a document for handwriting samples while ignoring the words' content. Thus, we hold that, before such an intrusion may be made into a person's private papers,[1] the police must have a warrant or some recognized

---

[1] The state argues that defendant's notebook "displayed no observable manifestation that defendant intended to keep the contents private; it was not labelled 'diary' or anything to indicate it was private, and it was not secured with a lock (as many diaries are) or even a rubber band." Thus, the state concludes that the notebook was subject to examination while it was in police custody. We disagree. "Papers" are specifically protected under Article I, section 9, against unreasonable

exception to the warrant requirement that authorizes the intrusion.

■■■■■ Because the police did not have a warrant to examine the notebook, we look to see if the search of it falls within one of the exceptions to the warrant requirement. For purposes of our analysis in this case, we have assumed that the notebook was seized under exigent circumstances. The exigent circumstances exception to the warrant requirement recognizes that practical necessity may require evidence to be seized before a warrant can be obtained. *State v. Brown*, 301 Or 268, 274, 721 P2d 1357 (1986); *State v. Nicholson*, 89 Or App 306, 748 P2d 1028, *rev den* 305 Or 672 (1988). However, searches and seizures are separate acts that must be analyzed separately. *State v. Tanner*, 304 Or 312, 316, 745 P2d 757 (1987); *State v. Peterson*, 114 Or App 126, 129, 834 P2d 488, *rev dismissed* 315 Or 272 (1992). When no emergency exists or the emergency has ceased to exist, for example, when officers have property in secure custody, a warrant must be obtained before a search of the property is authorized.

In *State v. Sears*, 69 Or App 260, 264, 684 P2d 1240 (1984), the police seized property from the defendant upon his arrest. They placed the property in an envelope and gave the envelope to jail custodians. The police later searched the contents of the envelope without a warrant, and the defendant moved to suppress the evidence obtained from the search.

In suppressing the evidence, we noted that the evidence "was not of an ephemeral nature," the defendant did not have access to the envelope and he could not have removed evidence from it. *Id.* at 264. We stated:

> "In short, there was no justification for the failure to obtain a search warrant beyond the fact that it was inconvenient to do so or that the police did not believe that they could obtain one on the basis of information that they had." *Id.*

■■■■■ Likewise, in this case, although exigent circumstances may have justified the warrantless invasion of defendant's *possessory* interest in the notebook, they did not justify

---

search and seizure. A person is not required to label his or her papers as private or otherwise secure them against inspection in order to protect them against governmental scrutiny.

the warrantless invasion of defendant's *privacy* interest in it. Once the police had the notebook in their possession, the officers no longer had reason to fear that the contents would be lost or destroyed; the exigency had expired. Absent another justification for the ensuing search of the notebook without a warrant, the search was invalid.

1■ The state offers no other justification for opening and reading defendant's notebook to look for handwriting samples. The state makes arguments in relation to the later re-readings of the notebook. Those arguments are premised, however, on a determination that the initial reading was valid. Because we have determined that the initial reading was a search and was invalid without a warrant, we do not address the state's remaining arguments. If the officers had probable cause to believe that defendant's notebook contained evidence of a crime, they were required to obtain a warrant before opening and reading it. Consequently, the trial court correctly ruled that the search was illegal, and any evidence that flowed from that search must be suppressed.[2]

■■ The state argues that, even if suppression of some of the evidence was proper, the trial court's order suppressing "the evidence of the contents of the documents seized from the defendant on August 26, 1991, and any evidence derived

---

[2] In his concurring opinion, Judge Edmonds concludes that the initial examination of the notebook was not a search, because "defendant had no privacy interest in the fact that the notebook contained his handwriting." 136 Or App at 182. He cites *State v. Herbert*, 302 Or 237, 729 P2d 547 (1986), and *State v. Owens*, 302 Or 196, 729 P2d 524 (1986), as support for that conclusion. Those cases are readily distinguishable from this case, and do not support the conclusion for which they are cited.

In *Herbert* and *Owens*, the court held that the searches at issue did not invade a privacy interest, because they simply sought to confirm information about the contents of the objects to be searched that the objects themselves conveyed about their contents. Significantly, there was no reason to believe that the search would disclose anything other than that the objects contained that which they were believed to contain, so the search would *not* invade any *remaining* privacy interest in the contents. That is because the objects themselves already had communicated everything that was private about their contents. Here, in contrast, the information known about the contents of the notebook before the search did *not* constitute everything that was private about them, because the notebook was expected to contain something more than a random combination of letters on which to make a handwriting comparison. The state concedes that reading the notebook for handwriting samples necessarily required the officers to read the content of the writing. Hence, scrutiny of the notebook to confirm its use for a handwriting comparison necessarily would intrude on defendant's privacy, which distinguishes this case from *Herbert* and *Owens*.

from the examination of those documents" is too broad. The state urges us to remand the case for "specific factual findings on the issues of plain view observation and inevitable discovery." The state's plain view argument fails because is it based on the assumption that the use of information obtained from the initial perusal of the notebook was lawful.[3]

 In order for the doctrine of inevitable discovery to apply, the state must establish by a preponderance of the evidence that, absent the unlawful conduct by the police, the police inevitably would have discovered the disputed evidence through proper and predictable investigatory procedures. *State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985). The state asserts that it would have discovered certain evidence through the officers' investigation. On the contrary, in its memorandum opposing defendant's motion to suppress, the state conceded that "[i]t is doubtful that the evidence providing probable cause for [the ten search warrants] would have been discovered without the inspection of defendant's 3″ by 5″ spiral notebook seized on August 26, 1991." Grow testified at the suppression hearing that he agreed with that concession. The trial court properly suppressed the evidence.

Affirmed.

**WARREN, P. J.,** concurring.

I agree with the result of the lead opinion, but not with its analysis. Our review is for errors of law. Defendant asserts that there is an alternative basis for affirming the trial court. He contends that the officers did not have probable cause when they seized the notebook and manilla folders. Defendant is correct.

Searches and seizures must be analyzed separately. *State v. Tanner*, 304 Or 312, 316, 745 P2d 757 (1987). Generally, a warrantless seizure is *per se* unreasonable unless it falls within one of the limited exceptions to the warrant

---

[3] Had the officers not illegally searched the notebook to look for handwriting samples, they never would have seen notations about storage units, which notations ultimately led them to search those units and discover evidence of defendant's criminal conduct. There is no evidence to suggest that the police would independently have looked for storage units connected with defendant. Had they not searched the first several storage units, they would not have seen evidence in "plain view" that led them to procure the later warrants.

requirement. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Here, the threshold issue is whether the officers acted lawfully when they seized defendant's papers without a warrant.

The state argues that the search was lawful because

"[t]he detectives had seen defendant writing in that notebook only moments earlier, and the exigency of the circumstances surrounding the arrest — defendant's refusal to provide a handwriting exemplar and his attempt to give the notebook to his attorney to keep it out of the hands of the police — permitted the officers to seize the spiral [notebook] on the spot without a warrant to prevent disappearance or destruction of evidence."

The state is correct that exigent circumstances may create an exception to the warrant requirement. *Id.* Before reaching the issue of exigent circumstances, however, the initial inquiry is whether or not the officers had probable cause before the seizure to believe that defendant's papers contained evidence of a crime. *State v. Ali*, 105 Or App 193, 197, 803 P2d 1231 (1991).

Under Article I, section 9, there are two components to probable cause: "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). The state does not argue or refer us to any evidence in the record that the officers, when they arrested defendant for theft by receiving, had probable cause to believe that a different crime had been committed and that defendant's papers contained evidence of that crime. It argues only that the officers properly seized defendant's papers as evidence of a handwriting exemplar.

A handwriting exemplar is evidence of identity. It is not *per se* evidence of a crime. In the absence of any argument by the state or facts that suggest that defendant's papers contained evidence of a crime, I would conclude that the initial seizure was unlawful because the state has not shown that the officers had probable cause to seize defendant's papers.

**EDMONDS, J.,** concurring.

The lead opinion finds it unnecessary to address defendant's contention about the lawfulness of the seizure of his notebook from his pocket, because it holds that the initial perusal of the notebook, in order to confirm that it contained material sufficient to constitute a handwriting exemplar, was an illegal search. In his concurring opinion, Judge Warren would hold the seizure of the notebook unlawful. I disagree with both conclusions, but would hold that the subsequent warrantless examination of the notebook after it was returned from the crime lab was unlawful. Therefore, I concur with the lead opinion's result, albeit for a different reason.

## THE LAWFULNESS OF THE
## SEIZURE OF THE NOTEBOOK

At the time the notebook was seized from defendant, the officers had probable cause to believe that defendant had unlawfully entered into a physician's office, stolen stationery from the office, and had sent a series of letters on the stationery. They had in their possession two forged letters written on the stationery. However, the crime laboratory had been unable to identify defendant as the author because the letters did not contain enough cursive writing. It had specifically requested more cursive writing samples from defendant with which to make a comparison.

On the day in question, defendant was in court on another pending matter. During the court hearing, the detectives saw defendant writing in a spiral notebook, which he put in his shirt pocket at the end of the hearing. At the request of the prosecutor, the presiding judge ordered defendant to furnish a handwriting sample immediately after the conclusion of the hearing. As defendant left the courtroom at the conclusion of the hearing, the detectives approached him intending to place him under arrest for another pending charge and to escort him to the police station so he could provide the exemplar ordered by the court. Both defendant and his attorney advised the officers that defendant would not comply with the court order to provide the exemplar. As defendant was being placed under arrest, he motioned to his attorney to retrieve the notebook from his pocket. Before the

attorney could comply with the request, one officer seized the notebook.

Judge Warren argues that the seizure was unlawful because he perceives the state as not making the argument that it had probable cause to seize the notebook as evidence and because he believes that the notebook was not seizable evidence. Both views are myopic. It is apparent from the state's argument before the trial court, and the trial court's ruling, that "[t]he detectives had probable cause to seize the documents," that the argument made below in support of the lawfulness of the seizure was predicated on probable cause to believe that the notebook contained evidence of a crime. Before this court, and in reliance on the trial court's ruling that probable cause to seize the notebook existed, the state proceeded to address the issue of exigent circumstances, the other prong of a lawful warrantless seizure. In summary, it is clear from the record, the briefs and oral argument that the state made the argument that probable cause existed to seize the notebook, and the issue is properly before us.

Second, the handwriting in the notebook is evidence of a crime. It is evidence that is relevant to the identification of defendant as the author of the forged documents and the person who broke into the physician's office and stole the stationery. *See State v. Garrett*, 7 Or App 54, 57, 489 P2d 994 (1971) (holding that the seizure of documents identifying the defendant as their owner was relevant to connect him with the possession of seized narcotics found in the same place). Furthermore, defendant's actions created the exigency necessary to justify the immediate seizure. Despite the court order that he furnish a handwriting sample, defendant and his attorney informed the detectives that defendant would disobey the order and defendant acted to dispose of the only evidence of his handwriting then available to the detectives. Under the circumstances, I would conclude that the seizure of the notebook was lawful because the officers had probable cause to believe that it contained evidence of the crime that they had been investigating and that the exigency created by defendant's actions justified its immediate seizure.

## THE INITIAL PERUSAL OF THE NOTEBOOK WAS NOT A SEARCH

Before sending the notebook to the crime lab for comparison, the officers looked through it to ascertain whether it contained specific letter combinations that matched the letter combinations in the forged letters. They then sent it together with other documents to the crime lab for examination. The issue is whether that brief perusal was an unreasonable search within the meaning of Article I, section 9, as the lead opinion concludes. Section 9 protects possessory and privacy interests. A search is an intrusion into a privacy interest of an individual by a governmental agent. "Not all government intrusions, however, trigger Article I, section 9, protections." *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986).

In this case, defendant's notebook is personal property and served as a container for written material. Privacy interests in personal property depend on the nature and the characteristics of the property. For instance, "not all containers found by the police merit the same protection under Article I, section 9." *Id.* Some containers announce their contents because they are transparent or because of their particular use. In *State v. Herbert*, 302 Or 237, 729 P2d 547 (1986), for example, the defendant was arrested on an outstanding warrant. He told the arresting officer that he wanted to retrieve some identification from the truck in which he had been riding. As the defendant reached for the identification, the officer saw the defendant attempt to hide an opaque paperfold made from a page torn out of a magazine. Based on his training and experience in the identification of controlled substances, the officer believed that the paperfold was a container for drugs. The officer seized the paperfold and took the defendant to jail. Later, he opened the paperfold and tested its contents without obtaining a search warrant. Subsequently, the defendant was indicted for possession of a controlled substance. He moved to suppress the contents of the paperfold on the basis that the search of the contents of the paperfold was warrantless. The court ruled:

"We have stated that the officer had probable cause to seize the paperfold and that the officer believed that the paperfold contained contraband. Because the officer, based

upon his experience, had probable cause to believe that the paperfold contained contraband, he had the right to search the paperfold for controlled substance and, therefore, had the right to open that container. Once the container was opened, and the contraband discovered, he had the right to test it." 302 Or at 243.

The court's holding in *Herbert* adopts the rationale found in *Owens* and illustrates the rule that a "search" of the contents of a container does not occur under section 9 when the contents of what has been seized are apparent. The contents are discernible to the same extent as if they had been discovered in plain view outside the container. Therefore, no cognizable privacy interest exists that protects them from government inspection or testing for the limited purpose of confirming the police officer's reasonable belief that they are what they purport to be. *Owens*, 302 Or at 207.

In this case, had defendant left his notebook open on the desk for anyone to read what he had written in it, he could claim no cognizable privacy interests in the fact that the notebook contained his handwriting. Similarly, when he wrote in his notebook in the courtroom, he announced to those there that the notebook contained a sample of his writing. While he retained a privacy interest in the words that he had written, his actions in the courtroom informed all who could observe that the notebook contained his writing in the same manner as the opaque paperfold in *Herbert* informed the officer who observed it of its contents.

The lead opinion concludes that despite the lawful seizure of the notebook, the police and the crime lab were required to obtain a search warrant before opening the notebook and confirming what the police had observed. That kind of reasoning was rejected when the *Owens* court distinguished the facts in *State v. Lowry*, 295 Or 337, 667 P2d 996 (1983), from the facts in *Owens*. In *Lowry*, a pill bottle was seized in the course of arresting the defendant for driving under the influence of intoxicants. The contents of the bottle were tested without the authorization of a search warrant. The court held that the search and the testing of the contents of the bottle violated section 9. The court pointed out that the facts in *Lowry* were distinguishable because, in *Lowery*, the arresting officer lacked probable cause to believe that the

contents of the bottle contained a controlled substance. 302 Or at 206 n 4. It held:

> "It is not a 'search' if *the purpose of the test of a lawfully seized item is to confirm the presence of whatever the police have probable cause to believe is present in that item.* A test for such a limited purpose does not infringe on any privacy interest protected by the Oregon Constitution." 302 Or at 206. (Emphasis supplied.)

Here, the officers had observed defendant writing in the notebook and thus had probable cause to believe that the notebook contained the letter combinations needed by the crime lab to complete their handwriting comparison analysis. An examination to confirm that the notebook contained defendant's handwriting is no more intrusive than the test of the opaque paperfold in *Herbert*. Consequently, Article I, section 9, did not require that the police obtain a warrant before opening the notebook for the limited purpose of confirming that fact. Once they lawfully seized the notebook, they were entitled to open it to confirm that it contained what they had probable cause to believe was there, *i.e.*, defendant's handwriting. To that extent, defendant had no privacy interest in the fact that the notebook contained his handwriting, and the lead opinion is wrong when it holds to the contrary.

## THE DETECTIVES' WARRANTLESS SEARCH OF THE NOTEBOOK AFTER IT WAS RETURNED FROM THE CRIME LAB CONSTITUTED A SEARCH

A lawful seizure does not necessarily authorize a search of the seized article for all purposes. The reason for the seizure may circumscribe the scope of the search, whether the seizure is based on probable cause to search, a search warrant or the consent of the possessor. In *State v. Binner*, 131 Or App 677, 886 P2d 1056 (1994), the defendant consented to the seizure of his blood for the limited purpose of testing it for blood alcohol content. Without a warrant, the police also tested the blood sample for a high THC (marijuana) level. We held that the defendant's limited consent to test his blood for alcohol content did not manifest an intent to abandon his privacy interest in the blood sample and that his privacy interest continued even though the police were in possession of the sample. 131 Or App at 683. The point of *Binner* is that

there can be more than one privacy interest in the contents of what has been seized.

In *United States v. Wright*, 667 F2d 793 (9th Cir 1982), officers searched the defendant's home pursuant to a search warrant that authorized a search for and the seizure of a driver's license belonging to a woman who lived in the same residence as the defendant. One of the officers executing the warrant found a ledger and opened it to determine if the license was in the ledger. The license was not there. However, knowing that the defendant had a reputation as a narcotics dealer, the officer took the ledger to another officer who had more expertise in investigating narcotics dealers. The second officer searched the ledger, found evidence of narcotics dealing, and seized it. In the resulting prosecution against the defendant, the defendant moved to suppress the ledger as evidence. The government sought to justify the seizure on the basis that the ledger was evidence of criminal conduct found in plain view. The court disagreed:

> "We recognize that [the officer who initially looked through the ledger] upon finding the ledger, was justified in inspecting it to determine whether the license that was the subject of the warrant was hidden there. To check the ledger for the license, however, did not require the perusal of the ledger's written contents. * * * Consequently, [the first officer] exceeded his authority to search for the license when he took the ledger to [the second officer] so that he could inspect its contents. Similarly, [the second officer] had no right to read the ledger's entries. The incriminating nature of the ledger was not 'immediately apparent' to [the second officer] but was revealed only after he carefully examined its contents.

> "If it were permissible to inspect the contents of the ledger, officers acting under a search warrant for any specific item would be empowered to inspect minutely diaries, letters, films and all matter of private materials unrelated to the authorized scope of the search. To permit this type of conduct under the cloak of the plain view exception would be tantamount to enlarging the scope of any search to that of the 'general warrant' abhorred by the colonists. The Constitution protects against such intrusions. We hold that the trial court erred in failing to suppress the evidence of the black ledger." *Id.* at 799.

An analysis similar to that employed in *Binner* and in *Wright* is applicable here. In *Binner*, the police lawfully

obtained the blood sample by consent. In this case, the police lawfully seized defendant's handwriting sample based on probable cause and exigent circumstances. In *Binner*, the scope of the resulting search was limited to the purpose for the seizure. Likewise, the detectives here perused defendant's notebook for a limited purpose: to confirm that it contained the letter combinations needed to make the handwriting comparisons. But it does not necessarily follow that defendant, like Binner or Wright, forfeited other possessory or privacy interests in the notebook. The police had no probable cause to explore the content of defendant's private writings. He had not exposed the content of what he had written to public view. After the authorities were through with the notebook for the limited purpose for which it had been seized, defendant was entitled to have it returned to him. ORS 133.623 *et seq*. Moreover, as in *Wright*, to the extent that the notebook contained entries that were not germane to the letter combinations that might lead to the identification of defendant as the author of the forged letters, defendant's privacy interest in those entries continued despite that fact that the notebook was in the possession of the police.

It is noteworthy that the police did not seek a search warrant based on what they saw during their initial perusal. Although what they saw at that time led them to suspect that the notebook contained other information germane to their investigation, the affidavits in support of the issuance of the warrants were based on information that was derived from the second reading of the notebook. Nothing prevented the detectives from seeking authority from a magistrate for a further search of the notebook if in fact they had probable cause to believe that the notebook contained other evidence of crimes, and such an action would have insured that no further invasion of defendant's private writings would have occurred absent probable cause for a search. In sum, the subsequent warrantless search exceeded the authority the police had to read the contents of the notebook to confirm the presence of letter combinations for purposes of handwriting comparisons. *See State v. Gilbert*, 276 Or 801, 556 P2d 651 (1976) (holding that officers executing a search warrant that specified certain other property were not authorized to open the engine compartment of an outboard motor to look for a

serial number absent probable cause to believe that the motor was stolen). Therefore, I concur with the lead opinion's result, but not with its reasoning.