## 68788. STEED v. CITY OF ATLANTA.
### (325 SE2d 165)

DEEN, Presiding Judge.

Appellant Steed has filed in this court an appeal from his conviction in the Traffic Court for the City of Atlanta on charges of driving under the influence and reckless driving. He enumerates as error that court's denial of his motion to suppress the results of an intoximeter test, alleging that the test was inadmissible under the provisions of OCGA §§ 40-5-55 and 40-6-392. *Held*:

1. An act of the 1967 General Assembly enacted pursuant to Article I, Section I, of the 1945 Constitution of Georgia and entitled "Traffic Courts Created in Certain Municipalities (300,000 or More)" established for certain cities, including Atlanta, city courts having jurisdiction over "[a]ll crimes and offenses under the laws of the State relating to and regulating traffic not above the grade of misdemeanor and not exclusively cognizable in the superior courts . . ." and "[a]ll offenses against the duly enacted laws and ordinances of such city relating to and regulating traffic." Ga. Laws 1967, p. 3362, Section 3 (a), (b). Appellate review of the decisions of these courts is provided for in Section 27 of the Act as follows: "(a) By the appropriate appellate court of this State in the misdemeanor cases" and "(b) By writ of certiorari in the appropriate superior court in all other cases." The Georgia Code designates driving under the influence of alcohol a misdemeanor. OCGA § 40-6-391. Jurisdiction of this appeal is therefore properly in this court.

2. In ruling on a motion to suppress evidence, the trial court must initially consider whether there was probable cause for the arrest. In the instant case an experienced police officer testified that he had observed the appellant "laying drags" with his automobile and driving twenty miles in excess of the posted speed limit on a city street filled with vehicles leaving the Atlanta Stadium, where a professional football game had been played. The officer testified that when appellant stopped his automobile and stepped out of the car, his eyes were glazed, his speech slurred, and his gait unsteady; that he exuded an odor of alcohol; and that he was unable to recite the alphabet.

Such testimony has been held repeatedly to constitute probable cause for arrest; this is true even when the witness is a lay person

rather than a police officer. *Griggs v. State*, 167 Ga. App. 581 (307 SE2d 75) (1983); *Lawrence v. State*, 157 Ga. App. 264 (277 SE2d 60) (1981). See also *Smitherman v. State*, 157 Ga. App. 526 (278 SE2d 107) (1981). The results of a breath test subsequently administered to appellant Steed confirmed the officer's observation. The test indicated a blood alcohol content of .12, exactly the level contemplated in OCGA § 40-6-391 (a) (4) and slightly above the .10 level which under OCGA § 40-6-392 (b) (3) gives rise to a presumption that the person tested is under the influence of alcohol. The arresting officer acted with probable cause, and appellant's contention to the contrary is without merit.

3. Appellant also challenges the admissibility of the breath test on the ground that the arresting officer had requested a blood test rather than a breath test, and that administration of a breath test instead of the blood test indicated on the citation was contrary to the explicit provision of OCGA § 40-5-55 (a). Under a theory of implied consent, Section 40-5-55 effectively mandates that a person charged with driving under the influence submit to whichever recognized chemical test (blood, breath, urine, etc.) is designated by the arresting officer. This statute, which is in derogation of the common law, must be strictly construed. *Hardison v. Chastain*, 151 Ga. App. 678 (261 SE2d 425) (1979). The statute in its own terms affords a special safeguard of the rights of those arrested under it, however, in that the testing procedure is expressly made "[s]ubject to Code Section 40-6-392." This latter Code section prescribes standards for the valid administration of the approved chemical tests and provides, *inter alia*, that "[t]he person tested [at the request of a law enforcement officer pursuant to Section 40-5-55] may have a . . . qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer."

Appellant alleges that the state of the art as regards breath tests is such that they have no validity; that this is the reason he asked for a blood test when the arresting officer asked him to state his preference; and that the administration of a breath test at the detention center violated the statutory directive that "the requesting law enforcement officer shall designate which of the aforesaid tests shall be administered." OCGA § 40-5-55 (a). This court, however, has routinely held results of breath tests for alcohol content to be competent evidence. The police officer who administered the breath test in the instant case testified at trial that, to the best of her recollection, she did not actually see the citation on which the arresting officer had checked which test was to be given but (as was not unusual) had followed the oral instruction given by the driver of the "paddy wagon" in which appellant had been transported from the site of the arrest to the detention center. The Attorney General of Georgia has rendered

an opinion stating that the person charged with driving under the influence has no right to elect which test is to be administered subject to this Code section. 1977 Op. Att'y Gen. No. 77-21.

4. Appellant further alleges that he was deprived of his statutory right under OCGA § 40-6-392 (a) (3), supra, to undergo an *additional* test of his own choosing. He testified that he requested a blood test four times, including his request that the arresting officer designate a blood test rather than a breath test. Other than reciting self-serving hearsay testimony, however, appellant offers no evidence in corroboration of his allegation. The arresting officer testified that appellant did not specifically request any test other than the compulsory state-administered test, and the testimony of the officer who administered the breath test was that, although she remembered appellant's face, she had no recollection of whether or not he had requested an additional test of any kind.

*Puett v. State*, 147 Ga. App. 300 (248 SE2d 560) (1978), on which appellant relies, is factually distinguishable from the case at bar but nevertheless offers the court some guidance. In *Puett* the defendant made arrangements by telephone for an independent test to be administered at a local hospital, but those in authority at the jail where he was being held refused or failed, upon being informed of the arrangement, to transport him to the hospital. This court held that the statutory right is illusory if law enforcement officers are derelict in their corresponding duty to enable a defendant to exercise that right.

The record in the instant case is devoid of affirmative evidence, other than appellant's uncorroborated and disputed testimony, that he was denied his statutory right to an additional test, or even that he asserted it. On the other hand, appellee has offered no affirmative evidence that Steed did *not* attempt to assert the right, whether by requesting law enforcement personnel to arrange for an additional test or by himself attempting to make such arrangements by telephone, as did the defendant in *Puett*, supra.

We have no reason to believe that the trial court improperly assessed the evidence actually before it, and ordinarily such a conclusion on the part of this court would lead us to affirm the judgment below. Although we by no means contend that it is the prerogative of the appellate court to weigh the evidence or to determine the credibility of witnesses, *Young v. State*, 232 Ga. 176 (205 SE2d 307) (1974); *Redd v. State*, 154 Ga. App. 373 (268 SE2d 423) (1980), we are concerned that in the instant case appellant stands convicted by a negative entity; that is, by the *absence* of any evidence, other than that dependent upon the frail and fallible human memory, as to whether or not he did in fact seek to obtain an additional test by making requests of the law enforcement personnel with whom he came in contact incident to his arrest and detention. The testimony on this cru-

cial point is in direct conflict, and the law provides no objective means of resolving that conflict, no tangible safeguard of either this explicit statutory right or concomitant and underlying constitutional rights. While there is no affirmative, verifiable evidence that appellant attempted to assert his right, neither is there any affirmative and verifiable evidence that he waived it. As this court inquired rhetorically in *Puett*, supra, "[Of] what value is [a] right if the accused is in custody of law enforcement officials who either refuse or fail to allow him to exercise the right?"

If the right granted in OCGA § 40-6-392 (a) (3) is to be anything other than a sham — if the Code section is to have any meaning at all — it is essential that there be some mechanism for ensuring that the section is taken seriously by law enforcement officials and that it is uniformly and invariably enforced. In this light, we construe the Code section as mandating an affirmative showing either that the accused has requested an additional chemical test (and, if so, which test he has requested) and has been given an opportunity to take the test; or that he has waived his statutory right to an additional chemical test of his own choosing. This affirmative showing might be achieved through some such simple mechanism as a printed form with blocks for the accused to check indicating that he either asserts his right to an additional test (and if so, which test), or waives that right. The form, of course, should also be signed and dated by the accused. Such a form, or whatever equivalent mechanism might be adopted, would constitute competent, probative, and conclusive evidence of compliance with the statute.

Because we believe that in the instant case appellant's constitutional and statutory rights have not been adequately safeguarded, we would reverse the judgment below.

*Judgment reversed. Sognier, J., concurs. McMurray, C. J., concurs in the judgment only.*

DECIDED NOVEMBER 19, 1984 —
REHEARING DENIED DECEMBER 4, 1984

*R. Jeffrey Morrison*, for appellant.
*Louise H. Norwood, Solicitor, Stratton Leedy, Michael A. White, Assistant Solicitors*, for appellee.