## A93A1901. THE STATE v. GERACE.
### (437 SE2d 862)

JOHNSON, Judge.

The police arrived at the scene of a reported traffic accident and found an overturned pickup. The truck was littered with empty beer bottles and blood, but no one was in it. About a mile away, the police found Michael Gerace lying injured by the side of the road. He was taken to the hospital where the police read him his implied consent rights, and obtained consent to take a blood test pursuant to OCGA § 40-5-55.

The blood sample was sent to the State Crime Lab where it was subjected to deoxyribonucleic acid (DNA) testing. This testing resulted in Gerace's arrest for rape and aggravated sodomy in connection with an incident which had occurred a month before the traffic accident. It is uncontroverted that prior to receiving the DNA test results, the police had no probable cause to arrest Gerace in connection with the rape; the blood sample was taken solely because Gerace was suspected of driving under the influence of alcohol, a charge which, to our knowledge, has not been pursued.

Gerace filed a motion to suppress the DNA test results and the trial court granted the motion, stating that the test exceeded the scope of the consent given for the sample. The State appeals the trial court's grant of Gerace's motion to suppress.

1. The State argues that the trial court erred in holding that OCGA § 40-5-55 limits the scope of consent to a test to determine alcohol and/or drug content of a suspect's blood. The State suggests in its brief that: "The plain language of the statute and cases interpreting it reveal no intent by the legislature or the courts to limit the Implied Consent Statute to the uses prescribed by the trial court." We disagree. The implied consent card read to Gerace, and as read at

the motion to suppress hearing states: "OCGA § 40-5-55 and 40-6-392 require you to submit to a state administered chemical test or tests of your blood, breath, urine or other bodily substances *for purposes of determining alcohol or drug content.*" (Emphasis supplied.) OCGA § 40-5-55 is in derogation of the common law and must be strictly construed. *Steed v. City of Atlanta*, 172 Ga. App. 839, 840 (3) (325 SE2d 165) (1984). So construed, the purpose of the statute could not be clearer; the statute's plain language reveals the legislature's intent to limit the drawing of blood only to test for alcohol or drugs.

2. The State further argues that the trial court erred in holding that the DNA test administered in this case violated Gerace's reasonable expectation of privacy in the content of his blood. The analogy drawn by the State to signatures of people taken into custody later used as evidence in forgery cases or fingerprints obtained during a search is inapt. The State ignores that probable cause and/or a warrant in either of those examples already exists. See *State v. Slavny*, 195 Ga. App. 818 (395 SE2d 56) (1990). The State's argument that because the blood sample was obtained with consent it is free to use it for any purpose, paints the notion of consent with far too broad a brush.

Gerace relies on, and we believe that his case is controlled by, *Beasley v. State*, 204 Ga. App. 214, 216-217 (1) (419 SE2d 92) (1992). In that case this court held that appellant Beasley gave consent for a urine sample for the purpose of determining bond, in connection with a questionably illegal policy of the Dougherty County Superior Court. Once Beasley's urine tested positive for cocaine he was charged with possession. This court held that consent for one purpose does not mean consent for ANY purpose, and therefore the consent was not the product of an essentially free and unrestrained choice. This is identical to the situation here. "Where the state seeks to justify a warrantless search on grounds of consent, it has the burden of proving that the consent was, in fact, freely and voluntarily given. The voluntariness of a consent to search is determined by looking to the totality of the circumstances, including such factors as the age of the accused, the length of detention, whether the accused was advised of his constitutional rights, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling. A consent to search must be the product of an essentially free and unrestrained choice by its maker. Under the totality of the circumstances presented in this case, we agree with [Gerace] that the consent he gave [the police] was not voluntary. His consent was premised on the incomplete and thus deceptively misleading information he received . . . that the test results would be used only for [determining blood alcohol or drug content]. Had [Gerace] been cautioned that the results of the search and seizure of his [blood] would be used

to supply evidence against him in an independent criminal prosecution, no consent might have been given." (Citations and punctuation omitted.) Id. at 216. Under these circumstances, we cannot find that consent was freely given. The trial court did not err in granting Gerace's motion to suppress.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 12, 1993.

*Harry N. Gordon, District Attorney, Jimmie E. Baggett, Jr., Richard L. Dickson, Assistant District Attorneys, for appellant.*

*Kardos, Warnes & McElwee, Stephen H. McElwee, for appellee.*