Argued and submitted October 3, affirmed December 14, 1994

# STATE OF OREGON,
## *Appellant,*

*v.*

# HOWARD DAVID BINNER,
## *Respondent.*

## (C93-06-34171; CA A81953)

886 P2d 1056

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Philip M. Lebenbaum argued the cause for respondent. With him on the brief was Hollander, Lebenbaum & Gannicott.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

**EDMONDS, J.**

In this criminal case, the state appeals from a pretrial order suppressing evidence of the results of drug tests performed on samples of defendant's blood. We affirm.

Defendant was charged with manslaughter in the second degree, ORS 163.125, and with failure to perform the duties of a driver, ORS 811.705. The state alleges that on June 23, 1993, defendant struck and killed a woman with the truck he was driving. The police officer called to the accident scene contacted defendant there and later at the hospital. In those contacts, the officer suspected that defendant was intoxicated and, as a result, asked if he would consent to a blood draw. She also requested if he would consent to a urine sample to check for drugs. Defendant refused to provide a urine sample, but did agree to have his blood drawn. The consent document, drafted by the officer and signed by defendant, said:

> "I authorize/give consent to have my blood drawn for the purpose of checking the blood alcohol content. This 10th day of June, 1993 at Portland Adventist Hospital. The blood will be drawn two times, one hour apart."

The results of the tests on his blood sample showed that his blood alcohol content was well below the legal limit. About two weeks after the initial blood draw, the police sent the blood samples to a lab for drug testing without informing defendant or requesting further consent. Also, the state did not apply for a search warrant. The test results "indicat[ed] a high THC (marijuana) level in the blood."

Defendant moved to suppress evidence of the "tests [sic] results of Defendant's blood, other than for blood alcohol content," arguing that any test beyond that for blood alcohol content exceeded the scope of defendant's consent and, therefore, constituted an unreasonable search and seizure. The trial court granted the motion. On appeal, the state argues that the trial court erred in granting the motion to suppress.

Article I, section 9, of the Oregon Constitution provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure; and no warrant shall issue but upon

probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

To be constitutionally permissible under section 9, a search or seizure must be accompanied by a warrant, unless it falls into one of the recognized exceptions to the warrant requirement. Consent to a search is one such exception. *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994). In this case, the parties agree that the blood drawn for the purpose of ascertaining defendant's blood alcohol content was a constitutionally valid seizure, because defendant consented to it. Nonetheless, defendant argues, and the trial court found, that he did not consent to his blood being tested for any other purpose and, therefore, the test for drugs was an unreasonable search. "When the police are relying upon consent as the basis for their warrantless search, they have no more authority than they have been given by the consent." 3 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* 160, § 8.1(b) (2d ed 1987). In *State v. Allen*, 112 Or App 70, 826 P2d 127 (1992), we said that "[a] consent to search may be confined in scope to specific items, restricted to certain areas or limited in purpose or time." 112 Or App at 74. In this case, defendant gave the police authority to take a blood sample for the *purpose* of checking blood alcohol content only, and any further "search" was outside the scope of consent.

Regardless of the scope of defendant's consent, the state argues that defendant's reasonable expectation of privacy in the drawn blood ended with the blood draw; therefore, no "search or seizure" occurred when the test for drugs was done. Alternatively, the state argues that defendant abandoned any privacy interest that he had in the sample. Defendant argues that his expectation of privacy in the contents of his blood continued even after it was removed from his body, and any testing beyond the test consented to constituted an unlawful search. *See State v. Wacker*, 317 Or 419, 426, 856 P2d 1029 (1993).

■ Article I, section 9, protects both privacy and possessory interests. In *State v. Owens*, 302 Or 196, 729 P2d 524 (1986), the court discussed the effect of section 9 on the testing of a substance lawfully seized from the defendant:

"When there is probable cause to believe that a lawfully seized substance is a controlled substance, a chemical test, for the sole purpose of determining whether or not it is a controlled substance, is neither a 'search' nor a 'seizure' under Article I, section 9. It is not a 'search' if the purpose of the test of a lawfully seized item is to confirm the presence of whatever the police have probable cause to believe is present in that item. A test for such a limited purpose does not infringe any privacy interest protected by the Oregon Constitution. Likewise, a test for this limited purpose is not a 'seizure.' A 'seizure' occurs when there is a significant interference with a person's possessory or ownership interests in property. The seizure of an article by the police and the retention of it (even temporarily) is a significant intrusion into a person's possessory interest in that 'effect.' However, once the item has been lawfully seized, the person's possessory interest in that property has been substantially reduced. The additional retention of the item, for the limited purpose of chemical analysis or testing is not a substantial interference with that possessory interest." 302 Or at 206-07. (Footnote omitted.)

■ Because this case concerns a limited consent by defendant to test his body fluid, it requires a different analysis than the one in *Owens*. First, the proper focus is not on defendant's possessory interest in the blood sample, but on whether he has a privacy interest in its contents.[1] Generally, a privacy interest under section 9 is

"an interest in freedom from particular forms of scrutiny. The interest is not one of freedom from scrutiny in general, because, if that were the case, any form of scrutiny would infringe a privacy interest and thereby be considered a search. A court has never held, for example, that a police officer engages in a search by making unaided observations from a public place, and an individual therefore cannot be said to have a constitutionally protected interest in freedom from such scrutiny.

---

[1] The issue in this case is inapposite from the issues in *State v. Enoch*, 21 Or App 652, 536 P2d 460 (1975), and *State v. Gonzalez*, 120 Or App 249, 852 P2d 851 (1993). In those cases, we considered whether a private entity that had possessory rights to the defendant's blood samples (*Enoch*) or medical records (*Gonzalez*), could deliver those materials to the police without the defendant's consent. In each case, we held that the defendants had no privacy or possessory interests in what they furnished to third persons. Neither case presented the issue of a limited consent given to the police to search body fluid.

"Government scrutiny aside, individual freedom from scrutiny is determined by social and legal norms of behavior, such as trespass laws and conventions against eavesdropping. One explanation for the absence of a constitutionally protected interest against certain forms of government scrutiny may be the absence of any freedom from those forms of scrutiny in society at large. The reason that the observations of a police officer who is standing in a public place infringe no privacy interest may be that there is no generally recognized freedom from such scrutiny by private individuals. Such observations by the police would thus not significantly reduce the freedom from scrutiny available to 'the people.' In contrast, both laws and social conventions have long recognized the right to exclude others from certain places deemed to be private. If the government were able to enter such places without constitutional restraint, 'the people's' freedom from scrutiny would be substantially impaired." *State v. Campbell*, 306 Or 157, 170-71, 759 P2d 1040 (1988). (Citations omitted.)

■ We hold that the testing of the contents of human blood implicates a privacy interest under section 9. Such testing could reveal the most personal of the medical details of our private lives that would not be known to the public in general.[2] As the United States Supreme Court in *Skinner v. Railway Labor Executives Ass'n*, 489 US 602, 616-17, 109 S Ct 1402, 103 L Ed 2d 639 (1989), noted:

"We have long recognized that a 'compelled intrusio[n] into the body for blood to be analyzed for alcohol content' must be deemed a Fourth Amendment search. *See Schmerber v. California*, 384 US 757, 767-768, 16 L Ed 2d 908, 86 S Ct 1826 (1966). In light of our society's concern for the security of one's person, it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable. *The ensuing chemical analysis of the same to obtain physiological data is a further invasion of the tested employee's privacy interests.* \* \* \*

"Unlike the blood-testing procedure at issue in *Schmerber*, the procedures prescribed by the [Federal Railroad Administration] regulations for collecting and testing urine samples do not entail a surgical intrusion into the body. It is

[2] *See* ORS 433.045(1), which prohibits an HIV-related blood test without the individual's consent.

not disputed, however, that chemical analysis of urine, *like that of blood*, can reveal a host of private medical facts about an employee * * *." (Emphasis supplied; some citations omitted.)

*See also State v. Milligan*, 304 Or 659, 664, 748 P2d 130 (1988).[3]

 Having determined that defendant has a privacy interest in the contents of his blood, the next issue is to what extent, if any, he intended to protect that interest when he executed the consent. *See State v. Louis*, 296 Or 57, 60, 672 P2d 708 (1983). Defendant expressly refused to consent to a test of his urine for drugs. His written consent is expressly limited to a test for alcohol content. The scope of a consent to search is determined by the consenting person. *State v. Weaver, supra*, 319 Or at 221. The necessary implication of defendant's limitation on the authority of the police to test the contents of his blood is that he did not intend them to test the sample for drugs. Under the circumstances, defendant has manifested an intention to protect his privacy interest to that extent. Nor can it be said that defendant intended to abandon his privacy interest in the blood sample. Although he may not have intended that the sample be returned to him, and thus waived his possessory interest in the sample, his privacy interest in its contents continued despite the fact that the police were in possession of it. The trial court did not err in suppressing the test results for THC content.

Affirmed.

---

[3] In *State ex rel Juv. Dept. v. Orozco*, 129 Or App 148, 878 P2d 432 (1994), we held that an order of a juvenile court requiring a child adjudicated as a sex offender to submit to a blood extraction, pursuant to ORS 137.060, for DNA testing, did not violate Article I, section 9, because the extraction was not an "unreasonable search." We distinguished our holding from *State v. Milligan, supra*, where the police drew a blood sample from a suspect as evidence of a particular crime. We said that the difference was that Orozco had a diminished privacy interest because of his adjudicated status and that the blood was being tested for the limited purpose of identification in the event he should re-offend. 129 Or App at 153. The facts of this case are more like the facts in *Milligan* than those in *Orozco*.