[No. B228049. Second Dist., Div. Four. Oct. 28, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
TROY CORSBY THOMAS, Defendant and Appellant.

**COUNSEL**

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan Sullivan Pithey and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

EPSTEIN, P. J.—Defendant Troy Corsby Thomas appeals from the denial of his motion to suppress evidence under Penal Code section 1538.5.[1] He contends that the deoxyribonucleic acid (DNA) testing of saliva he deposited on the mouthpiece of a preliminary alcohol screening (PAS) device constituted an illegal search. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Defendant was a suspect in a series of residential burglaries that occurred between 2006 and 2008. Genetic material was collected in five of these burglaries. A witness to a sixth burglary picked defendant's photograph from a six-pack photographic lineup. In November 2007, police received an anonymous tip about defendant and placed him under surveillance. On December 1, 2008, he was stopped for traffic violations. His eyes were bloodshot and watery. Defendant performed sobriety tests and consented to a PAS breath test that required him to place his mouth over the plastic tip of the PAS device and blow into it. Defendant was let go after passing all tests, but instead of discarding the mouthpiece of the PAS device, the police preserved it for DNA testing. The DNA profile derived from the mouthpiece linked defendant to two burglaries. A DNA sample obtained after defendant's arrest matched genetic material recovered from five of the burglaries. Additional evidence implicating defendant in the burglaries was found when police searched his home pursuant to a warrant after his arrest.

Defendant was charged with six counts of first degree residential burglary under section 459, as well as with prior felony enhancements under sections 1170.12, 667, and 667.5. His motion to suppress evidence was denied. Defendant pled no contest to a single burglary count and was sentenced to 17 years in prison under a plea agreement. This timely appeal followed.

## DISCUSSION

Defendant contends that testing the mouthpiece of the PAS device for DNA was a search that could not be conducted without a warrant under the Fourth Amendment to the United States Constitution. We conclude that the DNA test was not a search because defendant abandoned any privacy right he had in the saliva he deposited on the police device.

---

[1] All subsequent references are to the Penal Code unless otherwise indicated.

■    The Fourth Amendment protects against unreasonable governmental searches and seizures. A search occurs only when a government activity intrudes on an individual's reasonable expectation of privacy, measured by the individual's subjective expectation of privacy in the item searched and society's objective recognition of the reasonableness of the individual's subjective expectation of privacy. (*People v. Gallego* (2010) 190 Cal.App.4th 388, 395 [117 Cal.Rptr.3d 907] (*Gallego*), citing *California v. Ciraolo* (1986) 476 U.S. 207, 211 [90 L.Ed.2d 210, 106 S.Ct. 1809] and *Katz v. United States* (1967) 389 U.S. 347, 360–361 [19 L.Ed.2d 576, 88 S.Ct. 507] (conc. opn. of Harlan, J.).)[2] When an individual is compelled to provide a biological sample for analysis, the collection and subsequent analysis of the sample are treated as separate searches because they intrude on separate privacy interests. (See, e.g., *Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 616–617 [103 L.E2d 639, 109 S.Ct. 1402] [both collection and analysis of urine samples for mandatory suspicionless drug testing of railroad employees were searches because passing urine is traditionally done in private and urine analysis can reveal private medical facts].)

Courts recognize that current forensic DNA testing functions like genetic fingerprinting because it is used solely for purposes of identification. (See *People v. Robinson* (2010) 47 Cal.4th 1104, 1121 [104 Cal.Rptr.3d 727, 224 P.3d 55], and cases cited in it.) Defendant urges us to acknowledge that DNA can reveal more personal information than a fingerprint. We need not make that distinction here. The potential use of a DNA sample for purposes other than identification may be relevant to the extent of the government's intrusion on an individual's right to privacy in cases where it is necessary to determine whether a search is reasonable. (See *id.* at p. 1120.) But to make the preliminary determination whether a government activity is a search, it is unnecessary to explore the entire spectrum of private information that DNA carries. Until placed in lawful custody, an individual has a recognized privacy interest in his or her identifying information. (See *id.* at p. 1121.) Thus, even when used solely for purposes of identification, DNA testing intrudes on the reasonable expectation of privacy that a defendant not yet in police custody would have in his identifying information.

The question is whether a defendant may assert a privacy interest in a DNA sample that the police surreptitiously obtain from a publicly discarded

___

[2] Defendant suggests that his saliva on the mouthpiece of the PAS device was unreasonably seized but does not explain how the retention and testing of the mouthpiece interfered with his possessory interest in property. (See *United States v. Jacobsen* (1984) 466 U.S. 109, 113 [80 L.Ed.2d 85, 104 S.Ct. 1652] [a seizure "occurs when there is some meaningful interference with an individual's possessory interests in that property"].)

item or material. In *Gallego, supra,* 190 Cal.App.4th 388, a cigarette butt tossed by a murder suspect onto a sidewalk was collected and tested for DNA. The court concluded that the test did not constitute a search because the defendant could claim no privacy interest in the cigarette butt he had abandoned in a public place. (*Id.* at p. 395.) The court relied on *California v. Greenwood* (1988) 486 U.S. 35, 40–41 [100 L.Ed.2d 30, 108 S.Ct. 1625] (*Greenwood*), where the United States Supreme Court found no reasonable expectation of privacy in garbage bags containing evidence of drug trafficking because the bags had been left at the curb for garbage collection. (*Gallego,* at p. 395.) The *Gallego* court analogized the DNA testing of the discarded cigarette butt to the lifting of fingerprints from discarded juice containers in *People v. Ayala* (2000) 24 Cal.4th 243, 278–279 [99 Cal.Rptr.2d 532, 6 P.3d 193]. (*Gallego,* at p. 398.)

The trial court similarly found that defendant had abandoned the mouthpiece of the PAS device because he did not ask the officers to give it to him after the PAS test was over or to tell him what they planned to do with it. Defendant argues that he could not have abandoned a part of a testing device supplied by the police; nor could he have abandoned the DNA he deposited on it unconsciously. The court in *Gallego* agreed that abandonment requires a voluntary and conscious act, but tossing a cigarette butt on the sidewalk was deemed to be such an act. (*Gallego, supra,* 190 Cal.App.4th at p. 395.) The out-of-state cases on which *Gallego* relied went further, finding no expectation of privacy where a defendant could claim no possessory or ownership right in the object on which the DNA was deposited. (*Id.* at p. 396.) For instance, the defendant in *Commonwealth v. Cabral* (2007) 69 Mass.App.Ct. 68 [866 N.E.2d 429, 433] could not claim to have a reasonable expectation of privacy in saliva he spat on a public sidewalk. Similarly, in *Commonwealth v. Perkins* (2008) 450 Mass. 834 [883 N.E.2d 230, 238–240], the defendant, who had refused to give blood for DNA testing, was found not to have a reasonable expectation of privacy in a soda can from which he drank during an interrogation. The can was provided by the police, and the defendant knew he could not take it out of the interrogation room. (*Id.,* 883 N.E.2d at p. 240; accord, *Piro v. State* (Ct.App. 2008) 146 Idaho 86 [190 P.3d 905, 909–910] [no expectation of privacy in water bottle provided by police in interrogation room].) Alternatively, the defendant abandoned any privacy interest when he failed to clean the can. (*Commonwealth v. Perkins,* at p. 240.)

■ By the same token, defendant in this case had no privacy right in the mouthpiece of the PAS device, which was provided by the police, and he abandoned any expectation of privacy in the saliva he deposited on this device when he failed to wipe it off. Whether defendant subjectively expected

that the genetic material contained in his saliva would become known to the police is irrelevant since he deposited it on a police device and thus made it accessible to the police. The officer who administered the PAS test testified that used mouthpieces are normally discarded in the trash. Thus, any subjective expectation defendant may have had that his right to privacy would be preserved was unreasonable. (Cf. *Greenwood, supra*, 486 U.S. at p. 40 [no reasonable expectation of privacy in garbage made accessible to the public, including the police].)

Alternatively, defendant argues that, because he was not advised his saliva would be tested for DNA, he did not intend to relinquish any privacy interest in it when he consented to the PAS test. The trial court found that defendant voluntarily consented to the PAS test, but did not consent to DNA testing of the mouthpiece. Defendant does not challenge these findings. Rather, he seeks to impose on the doctrine of abandonment the requirement of knowing consent, contending that he could not validly waive the privacy right in his saliva without being advised that it would be genetically tested and attempting to circumscribe the doctrine of abandonment by the scope of his consent.

To this end, defendant analogizes his case to *Ferguson v. Charleston* (2001) 532 U.S. 67, 70–71 [149 L.Ed.2d 205, 121 S.Ct. 1281] (*Ferguson*), where urine samples obtained from pregnant women in a state hospital were tested for drugs, and positive test results were turned over to the police. The respondents in *Ferguson* conceded that the tests were searches, and argued only that they were justified by consent or special needs. (*Id.* at p. 76 & fn. 9.) The majority in *Ferguson* assumed without deciding that the tests were done without the patients' informed consent and concluded that the special needs exception to warrantless searches did not apply because of the involvement of law enforcement. (*Id.* at pp. 77 & fn. 11, 80–81.) Defendant argues that an attempt to apply an abandonment rationale under the facts of *Ferguson* "would have been laughed out of court." Because the abandonment doctrine was not at issue in *Ferguson*, defendant's argument runs counter to the axiom that a case cannot stand for a proposition not presented or decided in it. (See *People v. Annin* (2004) 117 Cal.App.4th 591, 606 [15 Cal.Rptr.3d 278].)

*Ferguson* did not involve the situation presented here, where the defendant consented to give a breath sample and in the process deposited saliva on a police device. In cases where a driver consents to give a blood sample under a state's implied consent law and the sample is afterwards genetically tested, some courts have concluded that the scope of the driver's consent does not

permit genetic testing, either because the driver expressly limited his consent or because the express statutory purpose for testing the blood sample is to ascertain the presence of alcohol or drugs in the blood. (See, e.g., *State v. Binner* (1994) 131 Ore.App. 677, 682–683 [886 P.2d 1056, 1059] (*Binner*); *State v. Gerace* (1993) 210 Ga.App. 874, 875–876 [437 S.E.2d 862, 863] (*Gerace*).)[3] The *Binner* court went further to hold that the defendant's limited consent indicated he did not intend to abandon his privacy rights in the blood sample. (*Binner*, 886 P.2d at p. 682.) Unlike the blood samples in *Binner* and *Gerace*, the PAS breath sample in this case was used only to measure any blood alcohol in defendant's body, a use consistent with the implied consent statute. (See Veh. Code, § 23612, subds. (h) & (i).) The saliva defendant deposited on the PAS device, in which defendant could claim no right to privacy, was a mere incident to the PAS test. It was not the material collected for the limited purpose of the implied consent statute, and its subsequent testing was not dependent on defendant's express or implied consent.

■ Defendant adds that the police should not be allowed to obtain a DNA sample through "fraud and deceit." Courts have allowed the use of ruses to obtain DNA samples on objects in which a defendant has no legitimate right to privacy, so long as the ruses are not coercive. (See, e.g., *Commonwealth v. Ewing* (2006) 67 Mass.App.Ct. 531 [854 N.E.2d 993, 1001] [offering defendant cigarettes and a straw during interrogation]; *People v LaGuerre* (N.Y.App.Div. 2006) 29 A.D.3d 820 [815 N.Y.S.2d 211] [contriving soda tasting test].) Here, obtaining defendant's DNA sample for use in a burglary investigation was incidental to obtaining a breath sample for the purpose of investigating a suspected crime of driving under the influence. As we already noted, defendant does not challenge the finding that he voluntarily submitted to the PAS test. Nor does he challenge the legality of the traffic stop. Defendant was not misled about the fact that he was dealing with the police in the context of a possible criminal investigation, or that he was providing a breath sample by placing his mouth on police equipment.

We conclude that defendant has no legitimate privacy interest in the saliva he deposited on the mouthpiece of the PAS device. Therefore, its subsequent genetic testing was not a search.

---

[3] Defendant relied on *Gerace* in the trial court. The trial court followed *People v. Daniels*, a case initially published, where the typing of a blood sample obtained from a driver under the California implied consent statute (now Veh. Code, § 23612, subd. (a)(1)) was held reasonable. The Supreme Court granted review but later dismissed the case. The order dismissing review did not restore the case to its published status, and the trial court could not rely on it. (See Cal. Rules of Court, rules 8.528(b)(3), 8.1105(e)(1), 8.1115(a).) Nor do we.

## DISPOSITION

The judgment is affirmed.

Manella, J., and Suzukawa, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 18, 2012, S198394.