[No. D060412. Fourth Dist., Div. One. Sept. 14, 2012.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v.
MICHEL MASON, Defendant and Appellant.

**COUNSEL**

Law Office of Marc E. Angelucci, Marc E. Angelucci; Men's Legal Center and Lisa A. Berg for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Linda M. Gonzalez and Mary Dahlberg, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—Michel Mason appeals a judgment of paternity issued by the San Diego County Superior Court based on Mason's failure to comply with an order to submit to a DNA (deoxyribonucleic acid) paternity test at a county contracted laboratory. Mason contends that he has a constitutionally protected privacy interest in his DNA that grants him the right to

select a private facility to conduct the paternity test in place of the laboratory with which the San Diego County Department of Child Support Services[1] maintains an ongoing contractual relationship. Because Mason's privacy interests are protected by statute and the County has a compelling interest in selecting a laboratory to make an accurate paternity determination, we determine that the trial court's order was proper and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Ardella Muhammad is the mother of E.M., and at the time of the complaint was receiving public assistance from the County on behalf of E.M. To offset public expense, the mother was obliged to assign to the county the right to any child support up to the amount of that assistance. (Welf. & Inst. Code, § 11477.) As assignee of the rights to child support owed to the mother, the county had an interest in determining the child's paternity.

The County filed a complaint against Michel Mason on April 27, 2010, to establish Mason as E.M.'s father and to establish the amount of child support Mason was to pay the County on E.M.'s behalf. Mason denied being the father and requested a paternity test. Mason also filed a declaration detailing the DNA collection process and chain of evidence for Genetic Profiles Corporation, a private paternity DNA testing laboratory in San Diego.

At the following two hearings, Mason requested the court order the testing be conducted by Genetic Profiles rather than the County's contracted laboratory, LabCorp. Mason stated concern about his DNA being collected and tested in a government building, by a government contracted company, under the auspices of a branch of the State of California. Mason said he did not know what would happen to his DNA once the County contracted company took his sample, and therefore claimed his constitutional right to privacy gave him the right to control who could take his DNA sample and what they could do with it. The County responded that it had an interest in using, and was statutorily required to use, its contracted laboratory to ensure the proper chain of custody and procedures were in place. The court agreed with the County, but decided to stay enforcement of its order to have testing done through the County contracted laboratory so that Mason could file a writ petition in the appellate court.

Mason filed writ petitions in the Fourth District Court of Appeal and the California Supreme Court, but both courts summarily denied the petitions.

---

[1] The San Diego County Department of Child Support Services (Department) has the duty to establish paternity and establish and enforce child support orders on behalf of the county where support will be paid to the county. (Fam. Code, §§ 17304, 17400 subd. (a).) Because the Department is an agent of the county acting on its behalf, we will not distinguish between the two in this opinion and refer to both the department and the county as the "County."

Mason also filed a memorandum of points and authorities claiming a right to privacy in his DNA under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under article I, section 1 of the California Constitution. In the memorandum of points and authorities, Mason asserted that his right to privacy gave him the right to choose a private laboratory to conduct the paternity test.

On June 14, 2011, the court ordered Mason, E.M., and the mother to provide genetic samples to the court-appointed laboratory, the same County contracted laboratory as had been the topic of dispute, by June 21 to complete a paternity test showing whether Mason was E.M.'s father. E.M. and the mother complied, but Mason did not submit a sample. Instead, at a July 19, 2011 hearing, Mason renewed his objection to the testing through the County contracted laboratory based on his constitutional privacy rights. The court again denied Mason's objection, and then entered a judgment of paternity in accordance with Family Code section 7551 based on Mason's refusal to submit to the paternity test. The court then ordered Mason to pay child support of $300 per month, provide E.M. with health insurance, and cover half of E.M.'s childcare and unreimbursed health care costs. Mason appealed, contending the order requiring him to submit to a paternity test at a County contracted facility violated his privacy rights under the Fourth Amendment to the United States Constitution and article I, section 1 of the California Constitution.

## DISCUSSION

■ Mason does not directly appeal the statutory authority for the judgment or the process by which it was entered. Rather, his appeal centers on the order that he submit a DNA sample to a government contracted laboratory rather than a private laboratory of his choice for the purpose of conducting a paternity test. Because the judgment of paternity was based on default due to Mason's refusal to submit his sample to the specified lab, a finding in favor of Mason on appeal may be moot as it is no longer relevant whether or where he takes a paternity test. Even when an issue is moot, however, there are circumstances when a court may nonetheless grant review. (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1006 [78 Cal.Rptr.2d 272].) One such time is where, as here, the issue presented is one of broad public interest that is likely to recur. (*Ibid.*) Because we affirm the superior court, we need not address whether a reversal would affect the final judgment of paternity based on Mason's refusal to submit to the County's paternity test.

The sole issue on appeal is whether, in a paternity determination proceeding where the government bears the burden of proof, an alleged father has a constitutional right to prevent a government contracted laboratory from

conducting a paternity test and to instead select a private laboratory to conduct the test. Before analyzing this issue, it is helpful to recognize what is not being contested. Mason does not object to the physical intrusion of a DNA sample being taken from his person by buccal swab. Mason has consented to this by requesting a paternity test. Mason has also consented to the use of his DNA for the limited purpose of determining whether he is the father of E.M. Finally, the County does not contest Mason's right to have any private laboratory of his choice conduct a paternity test and, if the results differ from those of the County's laboratory, present them to the court as conflicting evidence in the paternity determination.

■ By now, it is well established that the analysis of a DNA sample is independent from the taking of that sample, and presents its own distinct privacy concerns. (*Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 616–617 [103 L.Ed.2d 639, 109 S.Ct. 1402]; *People v. Thomas* (2011) 200 Cal.App.4th 338, 341 [132 Cal.Rptr.3d 714].) Those concerns arise because a person has a privacy interest in his or her own DNA profile and genetic information, even if only obtained and used for identification purposes. (See *People v. Robinson* (2010) 47 Cal.4th 1104, 1121 [104 Cal.Rptr.3d 727, 224 P.3d 55]; *U.S. v. Mitchell* (3d Cir. 2011) 652 F.3d 387, 410.) Courts have also recognized that DNA contains an extensive amount of sensitive personal information beyond mere identifying information, and people therefore have a strong privacy interest in controlling the use of their DNA. (*Id.* at p. 407.) This privacy interest is not absolute, however, and can be abridged for a compelling opposing interest where laws are in place to limit use of the DNA to a specific purpose intended to satisfy that interest. (See *Robinson, supra*, at p. 1121 [the nonconsensual collection of DNA samples from felons does not violate their constitutional rights because it serves the compelling interest of prosecuting crimes accurately and is limited by statute to use for identification purposes only].)

Mason contends that his privacy interest in his DNA gives him the right to deny the County contracted laboratory from conducting the paternity test and instead select a private laboratory to conduct the test. To demonstrate his privacy interest, Mason relies on cases that analyze the nonconsensual collection and storage of DNA from convicted criminals on supervised release[2] and

---

[2] In *U.S. v. Kincade* (2004) 379 F.3d 813, the court analyzed the privacy interest in the DNA from someone on supervised release from a prison sentence after pleading guilty to robbing a bank with a firearm. The defendant refused to give a DNA sample, but the court determined that his status as a federal offender gave him diminished privacy interests in his identifying DNA information. The defendant's limited privacy interest was outweighed by the government and society's interest in absolving the innocent and inculpating the guilty, among other things.

suspected felons,[3] and the nonconsensual collection of medical records from hospital patients.[4] Those cases, however, are inapposite because by denying paternity and requesting a paternity test, Mason consented to the taking and limited analysis of his DNA. Even if a private laboratory were to conduct the paternity test, the results, including Mason's genetic information, would necessarily be made available to the County for the purpose of proving or disproving paternity. Because there is nothing in the record to indicate that the County contracted laboratory would share, store, or otherwise act unlawfully toward Mason's DNA, there is no reason to believe that the County contracted laboratory would infringe on Mason's privacy any more than would a private laboratory conducting the test.

■ Not only is there no reason to suspect the County contracted laboratory would be likely to share Mason's DNA, but the Legislature has enacted a statutory scheme that protects people's privacy interests in their DNA. Information obtained by a government agency for the purpose of establishing paternity, i.e., a person's DNA, is specifically protected from examination, release, or disclosure for any purpose not directly related to the administration and implementation of child support. (Fam. Code, § 17212.) Any willful or knowing violation of that protection is a misdemeanor. (*Id.* subd. (e).) Furthermore, the Health Insurance Portability and Accountability Act of 1996 (HIPAA; Pub.L. No. 104-191 (Aug. 21, 1996) 110 Stat. 1936) prohibits the unauthorized disclosure or sharing of a person's medical information and imposes civil and criminal penalties on those who do. (42 U.S.C. §§ 1320d-5, 1320d-6; 45 C.F.R. § 164.508(a) (2011).) Federal law also requires the state agency to have safeguards in place to protect the inadvertent disclosure of any information used to establish paternity or determine child support. (42 U.S.C. § 654(26)(A).) Therefore, if Mason submits a DNA sample to the County contracted lab, it is protected from both intentional and unintentional use or disclosure for any purpose not related to establishing paternity and determining child support. Because Mason has consented to having his DNA used for those purposes, the laws sufficiently protect Mason's privacy from a constitutional standpoint.

---

[3] In *People v. Thomas, supra,* 200 Cal.App.4th 338, the court acknowledged the general privacy interest in one's DNA, but deemed it irrelevant where the defendant, a suspected burglar, had "abandoned" his DNA on a police preliminary alcohol screening device. Because the defendant had left his saliva on the device rather than wipe it off, the court decided he had forfeited the right to later object when police retrieved his DNA from the device and used it to link him to several burglaries.

[4] In *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55], the court analyzed the privacy rights guaranteed by the California Constitution as applied to a government request for patients' medical records for use in its investigation of the competency of a doctor. The court determined that medical records contain protected private information that people have a constitutional right to keep undisclosed from the government barring a compelling interest and a showing of good or probable cause.

■ The laws already mentioned that protect information used in the administration and implementation of child support necessarily restrict the County contracted laboratory from sharing Mason's DNA with CODIS[5] or other law enforcement databases. Furthermore, although California law requires DNA samples to be taken and identifying information to be recorded for people arrested for, charged with, or convicted of various crimes (Pen. Code, § 296), no California law provides authority for DNA taken in a paternity dispute to be entered into CODIS.

There is no evidence in the record to indicate that the County contracted laboratory would intentionally or unintentionally violate Mason's privacy interest by sharing or disclosing his DNA information. With no evidence to the contrary, we follow the maxim of jurisprudence that the law has been obeyed. (Civ. Code, § 3548.) Therefore, we must assume that the County and the laboratory with which it contracts have not and will not violate the statutes protecting Mason's privacy. Although the possibility exists that the County contracted laboratory will violate the laws protecting Mason's privacy, the possibility also exists that a private laboratory of Mason's own choice would share his information. Because there is no evidence in the record to suggest the County contracted laboratory or any other laboratory has engaged or is likely to engage in inappropriate sharing of DNA information, we give no weight to any allegation that a laboratory will abuse Mason's DNA just because it contracts with the government, takes the sample in a government building, or any other arbitrary reason.

■ The government has a recognized interest in establishing paternity. (Fam. Code, § 7570.) This interest is enhanced where the government is paying to support the child, and could stand to be at least partially reimbursed for that support by establishing the child's paternity. Just as the father has the right to choose a laboratory to conduct the paternity test and have an expert testify to that laboratory's results, the government has a right to choose its own laboratory and select its own expert to present the results from that laboratory's paternity test. Here, the County has an established relationship with LabCorp, and is comfortable with that laboratory's procedures and chain of custody. The court and County both have the right to select a qualified expert witness of their choice to testify in a paternity dispute. (Evid. Code, §§ 730, 733.) Both the court and the County have selected LabCorp as their laboratory of choice to conduct the paternity test and provide an expert representative to present the test results to the court. Whereas Mason's

---

[5] CODIS stands for Combined DNA Index System. CODIS is "a massive centrally-managed database linking DNA profiles culled from federal, state, and territorial DNA collection programs, as well as profiles drawn from crime-scene evidence, unidentified remains, and genetic samples voluntarily provided by relatives of missing persons." (*U.S. v. Kincade, supra,* 379 F.3d at p. 819.)

privacy interests are protected by statute, the County's interest in accurately determining E.M.'s paternity would be put in the hands of its adversary if Mason were permitted to bar the County contracted laboratory from conducting the paternity test and in its place select a private facility of his choice.

The trial court's order for DNA testing by LabCorp was proper and did not violate any of Mason's constitutionally protected privacy interests.

## DISPOSITION

The judgment is affirmed.

Haller, J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 28, 2012, S206159.