Filed 6/30/17

**CERTIFIED FOR PUBLICATION**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

**APPELLATE DIVISION**

| | |
|---|---|
| THE PEOPLE,<br><br>                Plaintiff(s) and Appellant(s),<br><br>    v.<br><br>AUBREE PICKARD,<br><br>                Defendant(s) and Respondent(s). | Appellate Division No.: CA269335<br>Trial Court Case No.:    CN358552<br>Trial Court Location:    North County Division<br><br><br>**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT** |

APPEAL from the Order granting defendant's Penal Code section 1538.5 motion to suppress the drug screening results entered by the Superior Court, San Diego County, Frank L. Birchak, Judge. Following argument on June 22, 2017, this matter was taken under submission.

AFFIRMED.

**PROCEDURAL AND FACTUAL BACKGROUND**

On February 19, 2016, the defendant was arrested for driving under the influence of alcohol. When the officer gave the Implied Consent Law admonishment, he told defendant that she'd have to submit to a breath or blood test. He further explained that the breath machine is unable to retain any kind of a sample for retesting. On the other hand, with the blood test, the nurse would draw two small vials of blood -- "[o]ne of those vials goes to the crime lab and *gets tested for*

*alcohol*….The second vial is held at no cost to you." (Emphasis added.)[1] Consistent with his field admonishment, the officer testified he told the defendant "that two small vials of blood will be drawn. One goes to the San Diego Country Crime Lab. It gets tested for *alcohol* and … that report gets added to my report at a later date." (Emphasis added.) The defendant elected to submit to a blood test. It was stipulated by the parties that the defendant's blood was analyzed for alcohol on February 29, 2016, and was later sent to Bio-Tox for a drug analysis. Bio-Tox received the second vial of defendant's blood on March 30th, and the Bio-Tox report dated April 1, 2016 reflected the positive results of the drug screen. On April 25, 2016, the People filed a complaint charging defendant with driving under the combined influence of alcohol and drugs in violation of Vehicle Code section 23152, subdivision (f).

After hearing the evidence during the suppression motion, the trial court found that the defendant had consented to the blood test after her arrest for driving under the influence. The trial court denied the motion to suppress the blood alcohol test dated February 29, 2016, but granted the motion to suppress the drug test results dated April 1, 2017 as beyond the scope of the defendant's consent, which was limited to testing the blood sample for alcohol. The People appeal from the order suppressing the drug test results.

**DISCUSSION**

The law on the scope of a suspect's consent has been set forth in *People v. Crenshaw* (1992) 9 Cal.App.4th 1403:

> "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect? [Citations.]" [Citation.] Generally, the scope of a warrantless search is denied by its expressed object. [Citation.] A consensual search may not legally exceed the scope of the consent supporting it. [Citation.] Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of the circumstances. [Citation.] Unless clearly erroneous, we uphold the trial court's determination.

(*Id.* at p. 1408.)

---

[1] This conversation was recorded on the officer's MVARS recording, and a transcript was provided to the court.

The People contend the defendant never limited the scope of her consent and that the second test for drugs did not exceed the scope of the consent.

> …[I]t is the government's burden to prove that a warrantless search was *within* the scope of the consent given. *People v. Superior Court (Arketa)* (1970) 10 Cal.App.3d 122, 127, states: "The authority to search pursuant to a consent must be limited to the scope of the consent." …. [¶] Thus, despite initial authorization - whether by warrant, probable cause, or consent - police officers may exceed the boundaries of the power conferred upon them and create illegality for their actions. Limitation may exist due to the specifications of the warrant [citation] or by the constitutional mandate [citation], or, in the case of consensual search, by the mutual understanding and reasonable expectations of the parties.

(*People v. Harwood* (1977) 74 Cal.App.3d 460, 466-467; original italics.) The People fail to acknowledge that it was the *officer* who limited the scope of the search of the blood to the testing of alcohol. Defendant was offered a breath test, which only tests for alcohol content and does not preserve a sample for retesting, or a blood test for *alcohol*. Under these facts and circumstances, Defendant did not have an affirmative obligation to expressly place limits on the consent when it was the mutual understanding of the defendant and the officer, and their reasonable expectations that the blood was to be tested *only* for alcohol.

The People cite to *People v. Miller* (1999) 69 Cal.App.4th 190, but that case is readily distinguishable. The court in *Miller* acknowledged that during the course of a consent search, the police do not have to blind themselves to contraband that is in plain view simply because it is not within the scope of their search. Here, the drugs in the defendant's blood were clearly not in plain sight, and their presence could only be detected by laboratory analysis.

The People also cite to *People v. Thomas* (2011) 200 Cal.App.4th 338 as a case most analogous to the instant case. However, the court in *Thomas* ruled that the DNA test of the PAS mouthpiece was not a search because the PAS mouthpiece in question had been discarded by the defendant was therefore abandoned property. Citing *Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 616-617, 109 S.Ct. 1402, the court in *Thomas* noted: "When an individual is compelled to provide a biological sample for analysis, the collection and subsequent analysis of the sample are treated as separate searches because they intrude on separate privacy issues." (*Thomas,*

*supra,* 200 Cal.App.4th at p. 341.)  The court in *Thomas* recognized that when a driver consents to a blood test under a state's implied consent law, the further testing of the sample for other substances or DNA may be beyond the scope of the consent. (*Id.* at pp. 343-344, citing *State v. Binner* (1994) 131 Or.App. 677, 682-683, 886 P.2d 1056, 1059 and *State v. Gerace* (1993) 210 Ga.App. 874, 875-876, 437 S.E.2d 862, 863.)

While no California court has specifically addressed the exact issue we have here, the facts in *State v. Binner* (1994) 131 Or. App. 667 are most analogous.  In that case, the defendant signed a written consent to have his blood drawn for alcohol analysis.  When the result of the blood sample showed that his blood alcohol content was well below the legal limit, the police sent the blood sample out for drug testing without informing the defendant or requesting further consent.  The second test indicated a high THC level in the blood.  The court, citing *Skinner v. Railway Labor Executives Ass'n.*, *supra,* determined the defendant had a privacy interest in the content of his blood.  The court upheld the suppression of the drug test results as beyond the scope of the consent, noting that his privacy interest in the contents of the blood sample continued despite the fact that the police were in possession of it.  The trial court in this instant matter also recognized *Skinner v. Railway Labor Executives Assn, supra*, as the basis for its finding that the testing of the defendant's blood for drugs, separate and apart from the testing for alcohol, needed to independently satisfy the Fourth Amendment.

The People rightfully argue that suppression is not an automatic consequence of a violation of the Fourth Amendment. (*Herring v. United States* (2009) 555 U.S. 135 137, 139, 141.)  "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, *or in some circumstances recurring or systematic negligence*." (*Id.* at p. 144; emphasis added.)  The good faith reliance, which the People urge the court to find as a basis for admitting the drug test results, is based upon *United States v. Leon* (1984) 468 U.S. 897 and its progeny.   There is nothing in the record to indicate whether or not the test of defendant's second blood sample for the detection of drugs was based upon good faith reliance.  The alcohol test was conducted on February 29, 2016, and presumably because the alcohol content of the defendant's blood was low, the sample was then routinely sent out for a drug screening a month later.

Where, as here, defendant's blood sample was impounded for alcohol testing only based on limited consent, absent specific evidence of good faith reliance, we find that the secondary testing for drugs was a procedural recurring or systematic failure by the law enforcement agency's personnel to abide by the Fourth Amendment. Contrary to the People's argument, we do not have to find the officer personally acted in a "deliberate," "reckless," or "grossly negligent" disregard for the defendant's Fourth Amendment rights to suppress the evidence. We find that he abided by the defendant's constitutional rights and obtained the blood sample by consent. However, it was the actions of the law enforcement agency's personnel related to the drug screening test, after the blood had been impounded for a test of its alcohol content only, that violated the defendant's constitutional rights.

**CONCLUSION**

The trial court's ruling suppressing the drug test results of the defendant's blood is affirmed. The case is remanded to the trial court for actions consistent with this Decision, which is limited to the facts of this case.

Unanimously affirmed.

KERRY WELLS
Presiding Judge, Appellate Division

CHARLES R. GILL
Judge, Appellate Division

GALE E. KANESHIRO
Judge, Appellate Division

Trial Court: San Diego County Superior Court

Trial Judge: Hon. Frank L. Birchak

Counsel:

Summer Stephan, District Attorney, Lilia Garcia, Deputy District Attorney, for Plaintiff and Appellant.

Christopher Zander, for Defendant and Respondent.